| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kelly A. Sweeney, SBN 239613<br>Glenn C. Kelble, SBN 162935<br>Luis F. Chaves, SBN 358441<br>Sweeney & Kelble APC<br>515 S. Flower St., 18th Floor<br>Los Angeles, CA 90071, Tel. (310) 955-4050<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>Margarita Ramirez,<br><br><br><br><br><br><br><br><br><br>                                            Debtor(s). | CASE NO.: 2:25-bk-14726-NB<br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(REAL PROPERTY)** |
| | DATE: 01/20/2026<br>TIME:  10:00 AM<br>COURTROOM: 1545 |

| **Movant:**  United States Real Estate Corporation; USRE Trust |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                 Page 1                          **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☒  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, ~~you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.~~ You must appear at the hearing.

    a.  ☒  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  01/19/2026

Sweeney & Kelble APC
Printed name of law firm (if applicable)

Glenn C. Kelble
Printed name of individual Movant or attorney for Movant

/s/ Glenn C. Kelble
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

**1. Movant is the:**

☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

☐ Other (*specify*):

**2. The Property at Issue (Property):**

    a. Address:

       *Street address*: 12711 Castleford Ln
       *Unit/suite number*:
       *City, state, zip code*: Cerritos, CA 90703

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit  2  ):

**3. Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter   ☐ 7  ☐ 11  ☐ 12  ☒ 13
       was filed on (*date*)  06/04/2025 .

    b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

    c. ☐ A plan, if any, was confirmed on (*date*) _____.

**4. Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☒ The bankruptcy case was filed in bad faith.

         (A) ☒ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☒ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*    Page 3    **F 4001-1.RFS.RP.MOTION**

   (3) ☐ (*Chapter 12 or 13 cases only*)

     (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

     (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

   (4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

   (5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

   (6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

   (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
Declaration of Glenn C. Kelble

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 4                    **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  01/19/2026

Sweeney & Kelble APC
Printed name of law firm (*if applicable*)
 Glenn C. Kelble
Printed name of individual Movant or attorney for Movant

/s/ Glenn C. Kelble
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 5                                    **F 4001-1.RFS.RP.MOTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

Debtor, Margarita Ramirez, has engaged in a pattern of improper delay tactics, solely to delay, hinder and defraud secured creditor United States Real Estate Corporation and USRE Trust, both before and during this bankruptcy case. The bankruptcy was filed in bad faith, with the property being transferred to Debtor on the same day this case was filed. Movant believes that cause exists to grant relief from the automatic stay and in rem relief is appropriate to put a halt to the continued bad faith actions of the Debtor.

1.    Facts and Procedural History

A.    2017 Short-Term Business Purpose Loan to Purchase Income Property

In 2017, United States Real Estate Corporation ("USREC") and the United States Real Estate Corporation Defined Benefit Pension ("USRECDBP" and its assignee[1], together with USREC, "Lender") made a business purpose loan (the "Loan") to Soluzion, Inc., a California corporation ("Soluzion") and Margarita Ramirez (Margarita Ramirez, together with Soluzion, "Borrowers") evidenced and secured by, among other things, the following instruments (the "Loan Documents"):

- Promissory Note dated October 16, 2017 executed by Borrowers in favor of Original Lender in the principal amount of $820,000 (the "Note"), which matured on November 1, 2019 (Exhibit 1).

- Deed of Trust and Assignment of Rents executed October 16, 2017, and recorded on October 30, 2017 in the Official Records of Los Angeles County, California as Instrument No. 2017.1242926 (the "Deed of Trust"), executed by Soluzion as trustor and naming Lender as Beneficiary, and which encumbers the real property in the County of Los Angeles, California commonly known as 12711 Castleford Ln, Cerritos, CA

---

[1] On March 29, 2019, USRECDBP assigned its rights under the Deed of Trust and Note to USRE Trust ("USRET") ("*Assignment of Deed of Trust*", **Exhibit** 3), and USREC and USRET are the current holders of the Note and Beneficiaries on the Deed of Trust.

90703 (Los Angeles County APN 7044-032-012) (the "Property"), and which secures the Note (Exhibit 2). The Deed of Trust contains a due on sale clause (Section 17).

- The Loan was a business purpose loan to fund Soluzion's purchase of the Property as income property (See Exhibit 4, "*Affidavit of Loan Purpose*", "*Certificate of Business Purpose of Loan*", "*Loan Purpose and Real Property Security Declaration*", "*Declaration of Non-Owner Occupancy*" signed by the Borrowers as part of the Loan Documents).

The Loan closed and a Grant Deed transferring title to the Property to Soluzion was recorded on October 30, 2017, in the Official Records of Los Angeles County, California as Instrument No. 2017.1242925 (Exhibit 5).

### B.   Three Extension Agreements

As the maturity approached, Borrowers requested that the maturity of the Loan be extended to allow them to refinance or sell the Property. Lender agreed and on October 8, 2019, Lender and Borrower entered into a "*Loan Extension/Modification Agreement*" which extended the maturity one year to November 1, 2020 (Exhibit 6). Another extension was requested and granted in a "*Loan Extension/Modification Agreement*" dated November 5, 2020, which extended the maturity to November 1, 2022 (*Id.*).  A final extension was requested and granted in a "*Loan Extension/Modification Agreement*" dated November 22, 2022 which extended the maturity to November 1, 2024 (*Id.*). In making these requests, Borrowers represented that they were trying to refinance or sell the Property. Lender agreed to these extensions to allow Borrowers time to try and accomplish this.

### C.   Borrower's Monetary Default and $117,314.12 in Defaulted Property Taxes

Borrowers stopped paying the monthly payment on the Loan beginning with the payment due March 1, 2024. Despite the monetary default, Lender continued to allow Borrowers time to refinance or sell. But by September, Lender couldn't wait any longer. Borrowers had let the Property fall into a tax default status and as of September 6, 2024, a total of $117,314.12 in defaulted taxes were due on the Property (Exhibit 7).

MEMORANDUM OF POINTS AND AUTHORITIES

On or about September 9, 2024, Lender entered into an installment plan with Los Angeles County to pay the defaulted taxes (Exhibit 8). Lender paid $23,537.82 to the County on September 9, 2024 (*Id.*) with similar payments due each quarter until the balance was paid off.

### D.    Foreclosure Is Started

Due to these significant and ongoing defaults, Lender caused a Notice of Default and Election to Sell Under Deed of Trust against the Property to be recorded on September 16, 2024, in the Official Records of Los Angeles County, California as Instrument No. 2024.628448 (the "NOD") (Exhibit 9). Lender caused a Notice of Trustee's Sale against the Property to be recorded on December 24, 2024, in the Official Records of Los Angeles County, California as Instrument No. 2024.917065 (Exhibit 10) (the "NOS"; together with the NOD, the "Foreclosure").

### E.    Short-Lived, Meritless Lawsuit and Two Purported Sale Agreements

Borrowers filed a lawsuit on March 3, 2025 in the Los Angeles County Superior Court, Case No. 25STCV05866 entitled *Margarita Ramirez aka Soluzion Inc. v. Superior Loan Servicing, et al.* (the "Lawsuit"), claiming that the Property was now her principal residence (despite all the representations to the contrary when the loan was obtained). The Lawsuit sought to stop the foreclosure.

On March 13, Borrowers' attorney presented a signed purchase and sale agreement for the Property with a stated 20-day closing period. Based on this, Lender and Borrower entered into a forbearance agreement dated March 14, 2025 with a forbearance period through April 17, 2025 to allow the purported sale to close. The Lawsuit was dismissed on March 17, 2025. The promised sale never occurred, and on April 10, 2025, Lender received an email from a realtor representing Ms. Ramirez attaching a *different* purchase and sale agreement for the Property, triggering an automatic statutory 45-day postponement of the foreclosure sale that had been scheduled for April 18, 2025 (Exhibit 11). Like the last one, this sale never materialized.

F.    Margarita Ramirez Files This Bankruptcy Case After

Transferring the Property Into Her Name on the Same Day

Margarita Ramirez filed this Chapter 13 Bankruptcy on June 4, 2025 (Case NO 2:25-bk-14726-NB), days before the next scheduled foreclosure sale date. Ms. Ramirez had her corporation, Soluzion, transfer the Property into her name on the same day via a "*Grant Deed*" recorded on June 4, 2025 in the Official Records of Los Angeles County, California as Instrument No. 20250372711 (Exhibit 12). In doing so, Soluzion essentially hijacked Ms. Ramirez's bankruptcy case.

Lender filed a Proof of Claim in the bankruptcy (Claim #2) arising from the secured Loan in the amount of $1,186423.65.

G.    Confirmation Hearings

Debtor's Chapter 13 Plan improperly treated the creditor's claim for the matured loan in "Class 2" (Claims secured solely by property that is debtor's principal residence on which obligation matures after the final plan payment is due"). Lender filed its objection to this improper treatment and at the first confirmation hearing on August 7, 2025, the Court admonished Debtor to consider retaining an attorney, required her to comply with the Chapter 13 Trustee's requirements which had not been met, and continued the confirmation to September 11, 2025. On September 9, Debtor retained her current bankruptcy counsel. Based on this development, the court continued the confirmation to November 6. On November 4, Lender's counsel was emailed by the Chapter 13 Trustee's attorney stating that "The Trustee will recommend a continuance of this matter to January 15, 2026 at 9:30 a.m. for the Debtor to file an amended plan to provide for sale of the real property and for sufficient time for escrow to close. Creditor USRE Trust will be paid in full from escrow." Based on this promise, Lender agreed to the continuance. Lender's attorney asked that Debtor's attorney keep them updated on any listing and sale activity. Lender's attorney heard nothing until the afternoon of January 14, 2026, when debtor's attorney emailed Lender's attorney purported escrow instructions for yet another "sale" of the property. However, when Lender pulled the MLS listing for the property later that evening it still showed as "Active", which it would not show if there was an opened escrow (Exhibit 13). No

1  amended plan was ever filed, and Debtor has made no efforts to employ a broker for a

2  sale. It has been over seven months since the bankruptcy was filed, and Debtor has

3  failed to do anything that she needed to do, or has promised to do.

4       At the continued confirmation hearing on January 15, 2026, the Court continued

5  the confirmation hearing but also set a relief from stay hearing with in rem relief on

6  January 21, 2026, with Lender's papers to be filed the day before, and Debtor to raise

7  any objections at the hearing. Had the Court dismissed the case at the January 15

8  hearing, Ms. Ramirez would no doubt have filed another bankruptcy case simply to

9  continue her pattern of conduct to delay, hinder and defraud Lender.

10

11  2.       Cause Exists to Grant Relief From Stay, With In Rem Relief

12       "Cause" justifying relief from the automatic stay under 11 U.S.C. § 362(d)(1) may

13  include the debtor's bad faith (or lack of good faith) in filing the bankruptcy case is

14  cause for granting relief from stay (or for dismissing the case). (*In re Arnold* (9th Cir.

15  1986) 806 F2d 937, 939; *Matter of Little Creek Develop. Co.* (5th Cir. 1986) 779 F2d

16  1068, 1072.)

17       In rem relief under 11 USC § 362(d)(4) can be granted upon a finding that: 1) the

18  party seeking stay relief is a creditor whose claim is secured by a security interest in the

19  real property; and 2) **the filing of the debtor's case was part of "a scheme to delay,**

20  **hinder, or defraud creditors" that involved either** the transfer of all or part ownership

21  of (or other interest in) the real property without the secured creditor's consent or

22  court approval; or multiple bankruptcy filings affecting such real property. (11 USC §

23  362(d)(4)(A) & (B).) **A "scheme" for purposes of** § 362(d)(4) is an intentional artful

24  plot or plan to delay, hinder, or defraud creditors. (*In re Jimenez* (9th Cir. BAP 2020)

25  613 BR 537, 545; *In re Duncan & Forbes Develop., Inc.* (BC CD CA 2006) 368 BR 27,

26  32.) The court may *infer* the existence and contents of an unlawful scheme from

27  circumstantial evidence. (*In re Duncan & Forbes Develop., Inc.* (BC CD CA 2006) 368

28  BR 27, 32.)

29       Here the evidence of the scheme is rather clear. Ms. Ramirez and Soluzion

30  sought three loan extensions, promising to refinance or sell to pay off the loan. That

did not happen. Meanwhile, Soluzion had allowed over $117,000 in defaulted taxes to accrue on the Property. Then Ms. Ramirez and Soluzion tried filing a very short-lived lawsuit to stop the foreclosure. That was dismissed after they presented a sale agreement and a obtained a forbearance from Lender to allow it to close – which it didn't. Another sale agreement was presented to the foreclosure trustee for a statutory 45-day postponement – and that didn't close. Ms. Ramirez then had Soluzion transfer the property to her on June 4, 2025 and filed this bankruptcy the same day. Soluzion had been the sole owner of the Property for *over seven years* prior to this bankruptcy case being filed. The Lender's Deed of Trust has a due on sale provision which does not allow Soluzion to transfer the Property without paying off the Loan. The Loan was applied for as a business purpose loan and the Property was identified as income property that would be purchased by Soluzion.

3.      Conclusion

        Moving party respectfully requests that the Court grant relief from the automatic stay under 11 U.S.C. § 362(d)(1) with in rem relief under 11 USC § 362(d)(4) as requested in the Motion.

Dated:   January 19, 2026                  Sweeney & Kelble APC


                                           By:   /s/ Glenn C. Kelble
                                                 Glenn C. Kelble
                                                 Attorneys for United States Real Estate
                                                 Corporation; USRE Trust

MEMORANDUM OF POINTS AND AUTHORITIES

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Matthew Mark                                                              , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐  I am the Movant.

   b. ☐  I am employed by Movant as (*state title and capacity*):

   c. ☒  Other (*specify*): I am the accounts manager of United States Real Estate Corporation; USRE Trust.

2. a. ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐  Other (*see attached*):

3. The Movant is:

   a. ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit  1    .

   b. ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit  2    .

   c. ☐  Servicing agent authorized to act on behalf of the:

      ☐  Holder.
      ☐  Beneficiary.

   d. ☐  Other (*specify*):

4. a. The address of the Property is:

   *Street address*: 12711 Castleford Ln
   *Unit/suite no.*:
   *City, state, zip code*:  Cerritos, CA 90703

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Deed of Trust and Assignment of Rents recorded in Los Angeles County Official Records as document #2017-1242926 on October 30, 2017. Los Angeles County APN # 7044-032-012.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

    a. ☐ Debtor's principal residence      b. ☒ Other residence
    c. ☐ Multi-unit residential      d. ☐ Commercial
    e. ☐ Industrial      f. ☐ Vacant land
    g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

    a. ☒ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

    f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.

       The deed was recorded on (*date*) 06/04/2025 .

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 2____ .

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
   attached as Exhibit 1____ .

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
   trust to Movant is attached as Exhibit 3____ .

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 813,556.99 | $ | $ 813,556.99 |
| b. | Accrued interest: | $ 190,824.99 | $ | $ 190824.99 |
| c. | Late charges | $ 25,893.02 | $ | $ 25,893.02 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ 465.00 | $ | $ 465.00 |
| e. | Advances (property taxes, insurance): | $ 155,683.65 | $ | $ 155,683.65 |
| f. | Less suspense account or partial balance paid: | $[            ] | $[          ] | $[0.00          ] |
| g. | TOTAL CLAIM as of (*date*): 6/4/2025 | $ 1,186,423.65 | $ 0.00 | $ 1,186,423.65 |

    h. ☒ Loan is all due and payable because it matured on (*date*) 11/01/2024

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

    a. Notice of default recorded on (*date*) 09/16/2024 or ☐ none recorded.

    b. Notice of sale recorded on (*date*) 12/24/2024 or ☐ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) 01/17/2025 or ☐ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

      An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** 0.00 | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 8                                    **F 4001-1.RFS.RP.MOTION**

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _02/12/2026_.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ * |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

*The entire loan matured on 11/1/2024 and is due and payable.

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                     $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                          $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                        $[                    ]

TOTAL POSTPETITION DELINQUENCY:            $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                      Page 9                          **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☒ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (*specify*):
      See attached continuation page for information establishing the bad faith filing.

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

     1. Case name: _____
       Chapter: _____ Case number: _____
       Date dismissed: _____ Date discharged: _____ Date filed: _____
       Relief from stay regarding the Property ☐ was ☐ was not granted.

     2. Case name: _____
       Chapter: _____ Case number: _____
       Date dismissed: _____ Date discharged: _____ Date filed: _____
       Relief from stay regarding the Property ☐ was ☐ was not granted.

     3. Case name: _____
       Chapter: _____ Case number: _____
       Date dismissed: _____ Date discharged: _____ Date filed: _____
       Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 10                    **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/19/2026 | Matthew Mark | *Matthew Mark* |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 11                                    **F 4001-1.RFS.RP.MOTION**

REAL PROPERTY DECLARATION OF MATTHEW MARK
CONTINUATION PAGES

I, Matthew Mark, declare as follows:

1.      I am the Chief Executive Officer of Unites States Real Estate Corporation. I have personal knowledge of the matters set forth in this declaration and if called upon to testify regarding this matter, I could and would competently testify to the contents herein.

2.      I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in **the ordinary course of Movant's business** at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

2017 Short-Term Business Purpose Loan to Purchase Income Property

3.      In 2017, United States Real Estate Corporation ("USREC") and the **United States Real Estate Corporation Defined Benefit Pension ("USRECDBP" and its assignee[2], together with USREC, "Lender") made a business purpose loan (the "Loan") to** Soluzion, Inc., a California corporation ("Soluzion") **and Margarita Ramirez (Margarita Ramirez, together with Soluzion, "Borrowers") evidenced and secured by, among other things, the following instruments (the "Loan Documents"):**

---

[2] On March 29, 2019, USRECDBP assigned its rights under the Deed of Trust and Note to USRE Trust ("USRET") ("*Assignment of Deed of Trust*", **Exhibit** 3), and USREC and USRET are the current holders of the Note and Beneficiaries on the Deed of Trust.

1

- Promissory Note dated October 16, 2017 executed by Borrowers in favor of **Original Lender in the principal amount of $820,000 (the "**Note"), **which** matured on November 1, 2019 (a true and correct copy of which is attached as Exhibit 1).

- Deed of Trust and Assignment of Rents executed October 16, 2017, and recorded on October 30, 2017 in the Official Records of Los Angeles County, California as Instrument No. 2017.1242926 (the "Deed of Trust"), executed by Soluzion as trustor and naming Lender as Beneficiary, and which encumbers the real property in the County of Los Angeles, California commonly known as 12711 Castleford Ln, Cerritos, CA 90703 (Los Angeles County APN 7044-032-012) (the "Property"), **and** which secures the Note (a true and correct copy of which is attached as Exhibit 2). The Deed of Trust contains a due on sale clause (Section 17).

- **The Loan was a business purpose loan to fund Soluzion's purchase of the** Property as income property (See true and correct copies of the following documents as Exhibit 4**,** "*Affidavit of Loan Purpose*", "*Certificate of Business Purpose of Loan*", "*Loan Purpose and Real Property Security Declaration*", "*Declaration of Non-Owner Occupancy*" **signed by the** Borrowers as part of the Loan Documents).

4.    The Loan closed and a Grant Deed transferring title to the Property to Soluzion was recorded on October 30, 2017, in the Official Records of Los Angeles County, California as Instrument No. 2017.1242925 (a true and correct copy of which is attached as Exhibit 5).

Three Extension Agreements

5.    As the maturity approached, Borrowers requested that the maturity of the Loan be extended to allow them to refinance or sell the Property. Lender agreed and on **October 8, 2019, Lender and Borrower entered into a "***Loan Extension/Modification Agreement*" **which extended the maturity one year to November 1, 2020 (**a true and correct copy of which is attached as Exhibit 6). Another extension was requested and **granted in a "***Loan Extension/Modification Agreement*" dated November 5, 2020,

2

which extended the maturity to November 1, 2022. (*Id.*) A final extension was **requested and granted in a** "*Loan Extension/Modification Agreement*" dated November 22, 2022 which extended the maturity to November 1, 2024. (Id.) In making these requests, Borrowers represented that they were trying to refinance or sell the Property. Lender agreed to these extensions to allow Borrowers time to try and accomplish this.

**Borrower's Monetary Default and $117,314.12 in Defaulted Property** Taxes

6.      Borrowers stopped paying the monthly payment on the Loan beginning with the payment due March 1, 2024. Despite the monetary default, Lender continued **to allow Borrowers time to refinance or sell. But by September, Lender couldn't wait** any longer. Borrowers had let the Property fall into a tax default status and as of September 6, 2024, a total of $117,314.12 in defaulted taxes were due on the Property (a true and correct copy of which is attached as Exhibit 7). On or about September 9, 2024, Lender entered into an installment plan with Los Angeles County to pay the defaulted taxes (a true and correct copy of which is attached as Exhibit 8). Lender paid $23,537.82 to the County on September 9, 2024 (*id.*) with similar payments due each quarter until the balance was paid off.

Foreclosure Is Started

7.      Due to these significant and ongoing defaults, Lender caused a Notice of Default and Election to Sell Under Deed of Trust against the Property to be recorded on September 16, 2024, in the Official Records of Los Angeles County, California as Instrument No. 2024.628448 (the "NOD") (a true and correct copy of which is attached as Exhibit 9**). Lender caused a Notice of Trustee's Sale against the Property to** be recorded on December 24, 2024, in the Official Records of Los Angeles County, California as Instrument No. 2024.917065 (a true and correct copy of which is attached as Exhibit 10) (**the "NOS"; together with the NOD, the "**Foreclosure**").**

Short-Lived, Meritless Lawsuit and Two Purported Sale Agreements

8.      Borrowers filed a lawsuit on March 3, 2025 in the Los Angeles County Superior Court, Case No. 25STCV05866 entitled *Margarita Ramirez aka Soluzion Inc.*

1  *v. Superior Loan Servicing, et al.* (the "Lawsuit"), claiming that the Property was now

2  her principal residence (despite all the representations to the contrary when the loan

3  was obtained). The Lawsuit sought to stop the foreclosure.

4      9.      **On March 13, Borrowers' attorney presented a signed purchase and sale**

5  agreement for the Property with a stated 20-day closing period. Based on this, Lender

6  and Borrower entered into a forbearance agreement dated March 14, 2025 with a

7  forbearance period through April 17, 2025 to allow the purported sale to close. The

8  Lawsuit was dismissed on March 17, 2025. The promised sale never occurred, and on

9  April 10, 2025, Lender received an email from a realtor representing Ms. Ramirez

10 attaching a *different* purchase and sale agreement for the Property, triggering an

11 automatic statutory 45-day postponement of the foreclosure sale that had been

12 scheduled for April 18, 2025 (a true and correct copy of which is attached as Exhibit

13 11). Like the last one, this sale never materialized.

14     Margarita Ramirez Files This Bankruptcy Case After Transferring the

15     Property Into Her Name on the Same Day

16     10.     Margarita Ramirez filed this Chapter 13 Bankruptcy on June 4, 2025 (Case

17 NO 2:25-bk-14726-NB), days before the next scheduled foreclosure sale date. Ms.

18 Ramirez had her corporation, Soluzion, transfer the Property into her name on the

19 **same day via a "***Grant Deed***" recorded** on June 4, 2025 in the Official Records of Los

20 Angeles County, California as Instrument No. 20250372711 (a true and correct copy of

21 which is attached as Exhibit 12). In doing so, Soluzion essentially hijacked Ms.

22 **Ramirez's bankruptcy case.**

23     11.     Lender filed a Proof of Claim in the bankruptcy (Claim #2) arising from

24 the secured Loan in the amount of $1,186423.65.

25     Confirmation Hearings

26     12.     **Debtor's Chapter 13 Plan improperly treated the creditor's claim for the**

27 matured loan in "Class 2" (Claims secured solely by property that is debtor's principal

28 residence on which obligation matures after the final plan payment is due"). **Lender**

29 filed its objection to this improper treatment and at the first confirmation hearing on

30 August 7, 2025, the Court admonished Debtor to consider retaining an attorney,

1  required her to comply with the Chapter 13 Trustee's requirements which had not been
2  met, and continued the confirmation to September 11, 2025. On September 9, Debtor
3  retained her current bankruptcy counsel. Based on this development, the court
4  continued the confirmation to November 6. On November 4, Lender's counsel was
5  emailed by the Chapter 13 Trustee's attorney stating that "The Trustee will recommend
6  a continuance of this matter to January 15, 2026 at 9:30 a.m. for the Debtor to file an
7  amended plan to provide for sale of the real property and for sufficient time for escrow
8  to close. Creditor USRE Trust will be paid in full from escrow." Based on this promise,
9  Lender agreed to the continuance. Lender's attorney asked that Debtor's attorney keep
10  them updated on any listing and sale activity. Lender's attorney heard nothing until the
11  afternoon of January 14, 2026, when debtor's attorney emailed Lender's attorney
12  purported escrow instructions for yet another "sale" of the property. However, when
13  Lender pulled the MLS listing for the property later that evening it still showed as
14  "Active", which it would not show if there was an opened escrow (a true and correct
15  copy of which is attached as Exhibit 13). No amended plan was ever filed, and Debtor
16  has made no efforts to employ a broker for a sale. It has been over seven months since
17  the bankruptcy was filed, and Debtor has failed to do anything that she needed to do,
18  or has promised to do.

19      13.    At the continued confirmation hearing on January 15, 2026, the Court
20  continued the confirmation hearing but also set a relief from stay hearing with in rem
21  relief on January 21, 2026, with Lender's papers to be filed the day before, and Debtor
22  to raise any objections at the hearing. Had the Court dismissed the case at the January
23  15 hearing, Ms. Ramirez would no doubt have filed another bankruptcy case simply to
24  continue her pattern of conduct to delay, hinder and defraud Lender.

25      I declare under penalty of perjury under the laws of the United States of America
26  that the foregoing is true and correct.

27
28
29
30

REAL PROPERTY DECLARATION OF MATTHEW MARK
CONTINUATION PAGES

Executed on ___January 19, 2026___
*date*

*Matthew Mark*
_____
*signature*

Matthew Mark
_____
*printed name*

REAL PROPERTY DECLARATION OF MATTHEW MARK
CONTINUATION PAGES

# EXHIBIT 1

# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
### PARTIALLY AMORTIZED BALLOON PAYMENT NOTE
### 1-4 RESIDENTIAL NON-OWNER OCCUPIED PROPERTY
### BUSINESS PURPOSE LOAN

Loan Number: RMF4019796  
Loan Amount: $820,000.00

Property Address: **12711 CASTLEFORD LANE, CERRITOS, CA 90703**  
BURLINGAME, California

OCTOBER 16, 2017

In installments as herein stated, for value received, SOLUZION, INC., A CALIFORNIA CORPORATION AND MARGARITA RAMIREZ, the undersigned Borrower(s), promise to pay to EXHIBIT D, the Beneficiary, or order, at a place that may be designated by the Beneficiary, the sum of: $820,000.00, EIGHT HUNDRED TWENTY THOUSAND DOLLARS exactly with interest from the date of funding on the unpaid principal at the rate of 10.99% percent per annum, payable in 24 partially amortizing installments of $7,605.48 each, beginning on 12/01/2017, and continuing MONTHLY ON THE FIRST DAY OF EACH MONTH thereafter until maturity, 11/01/2019, at which time all sums of principal and interest then remaining unpaid shall be due and payable in full. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis. At the option of the Beneficiary, each payment shall be credited first on interest then due, then on late charges, then on advances, then on fees and the remainder on principal; and interest shall thereupon cease upon the principal so credited.

**Default of payment.** Upon default in any payment of any installment, then the balance of this obligation shall become due immediately at the option of the Holder hereof. Principal, interest, and all funds due Beneficiary payable in lawful money of the United States of America. Except where federal law is applicable, this Note shall be construed and enforceable according to the laws of the State of California for all purposes and any terms herein inconsistent therewith are hereby modified to conform to said law at the time of signing of these loan documents. Time is of the essence for each and every obligation under this Note.

---

**THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN**

**At the option of the Beneficiary, if any payment should be insufficient to pay the interest then due, the balance of interest remaining shall be added to principal and will bear interest at the Note rate as the principal.**

**At the option of the Beneficiary, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan or foreclosure, the total sum of these amounts will bear interest at the Note rate from the date due or advanced until the date repaid.**

---

If this Note is not paid when due, the Borrower(s) promise to pay, in addition to the principal and interest due under this Note, all costs of collection and any reasonable attorneys' fees incurred by the Beneficiary thereof on account of such collection, whether or not suit is filed hereon. Each Borrower consents to renewals, replacements, and extensions of time for payment hereof before, at, or after maturity; consents to the acceptance of security for this Note and waives demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the note or the "Default" interest, whichever is higher, from date of advance until date paid in full.

**Payment late charge.** If any installment due hereunder is delinquent more than 10 days, the Borrower to this Note agrees to pay a late charge on each installment of $5.00 or 10.00% of the delinquent payment, whichever is larger. All late charges are to be paid immediately on demand.

**Balloon late charge.** In addition, if any balloon payment is delinquent more than TEN days, the borrower will be charged **$82,000.00** as liquidated damages.

Borrower acknowledges that its failure to make timely payments under this Note will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charges provided for in this Note represent fair and reasonable estimates taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payments. The late charges are payable in addition to, and not in lieu of, any default interest provided below.

**Return check charge.** Borrower and Beneficiary agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiary's agent for the return of an unpaid check provided by Borrower. It is hereby agreed that Borrower will pay the sum equal to 5% of the amount returned or $25.00, whichever is greater. However, in any event the maximum charge for an unpaid check is not to exceed the sum of $35.00. This amount is in lieu of any statutory monetary penalty, if any; however, Beneficiary does not waive any other rights that may be awarded under any statute. Should Borrower have two or more returned checks, for any reason, during the life of the loan, Beneficiary may demand that Borrower make payments in the form of cash, cashiers check or money order.

**Right to assign.** The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

**Prepayment penalty.** The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty, however, Beneficiary is guaranteed to receive a minimum of **6 months** interest based on the original principal balance together with any interest paid or due in escrow.

**Default interest.** Should Borrower default on any terms and conditions of this loan, Borrower shall pay a default interest rate in the amount 6.00% per annum, in addition to the current rate of 10.99%, based on the principal balance and on all outstanding advances and advances to be made after default has occurred. Default interest shall commence as of the date of the default and shall continue until such time default has been cured or loan has been paid off.

**Advancing Fee.** For any advances made to senior encumbrances and/or obligations to protect the Beneficiary's interest in this Note, there will be an advancing fee equal to three (3%) of the amount so advanced subject with a minimum fee of fifty dollars ($50) per advance (per lender). Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when all monies are paid in full in the form of cash and/or certified funds. ALL ADVANCES TO BE REPAID AT NOTE RATE OR DEFAULT INTEREST RATE, WHICHEVER ONE IS HIGHER, FROM DATE OF ADVANCE UNTIL DATE FUNDS ARE RECEIVED BY BENEFICIARY.

**Oral Representations.** The undersigned Borrower hereby states that the Beneficiary, their representative(s) nor any employee RUSHMYFILE, INC. has alluded to, given actual details(s) or discussed other terms of this loan other than what has been agreed to in writing.

**SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Deed of Trust securing the indebtedness, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Deed of Trust securing the indebtedness, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Deed of Trust, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Deed of Trust contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**Binding.** This Note and all of the covenants, promises and agreements contained in it shall be binding on and insure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of the Borrower and the Beneficiary.

**Acceleration clause.** This Note is secured by a First Deed of Trust of even date herewith which contains the following provision:

**In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.**

This Note is secured by a Deed of Trust to **SUPERIOR LOAN SERVICING**, as Trustee.

_____     10/17/17
SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower
                                                                                      /Date

_____     10/17/17
MARGARITA RAMIREZ – Co-Borrower                          /Date

INTENTIONALLY BLANK

DO NOT DESTROY THIS NOTE: When paid, this Note, with Deed of Trust securing same, must be surrendered to the Trustee for cancellation before reconveyance or Trustee's Deed. This loan was originated by RUSHMYFILE, INC., License No. 01893519, NMLS No. 396905, a company licensed by the Bureau of Real Estate (formerly the Department of Real Estate).

# Exhibit D

LENDER VESTING

UNITED STATES REAL ESTATE CORPORATION, AS TO AN UNDIVIDED 560,000/820,000 INTEREST; UNITED
STATES REAL ESTATE CORPORATION DEFINED BENEFIT PENSION, AS TO AN UNDIVIDED 260,000/820,000
INTEREST

| Lenders | % Ownership | Amount |
|---|---|---|
| UNITED STATES REAL ESTATE CORPORATION | 68.29% | $560,000.00 |
| UNITED STATES REAL ESTATE CORPORATION DEFINED BENEFIT PENSION | 31.71% | $260,000.00 |

CERTIFIED TO
BE COPY
OF ORIGINAL

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**



## 20171242926





**Pages: 0019**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/30/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 94.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 94.00 |



**L E A D S H E E T**



201710300170136

**00014435980**



008689693

**SEQ:
02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E534119

105_2504364_1_2



Recording requested by
PACIFIC COAST TITLE

RECORDING REQUESTED BY TITLE

WHEN RECORDED MAIL TO

Superior Loan Servicing
24013 Ventura Blvd., Suite 200,
Calabasas, CA 91302
Loan Number: RMF4019796

Property Address:
12711 CASTLEFORD LANE    *10069727*
CERRITOS, CA 90703

APN: 7044-032-012

SPACE ABOVE THIS LINE FOR RECORDERS USE

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 22. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated OCTOBER 16, 2017, together with all Riders to this document.

**(B) "Borrower"** is SOLUZION, INC., A CALIFORNIA CORPORATION. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 16731 E. TUDOR STREET, COVINA, CA 91722.

**(C) "Lender"** is EXHIBIT D. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is SUPERIOR LOAN SERVICING, to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

**(E) "Note"** means the promissory note signed by Borrower and dated OCTOBER 16, 2017. The Note states that Borrower owes Lender EIGHT HUNDRED TWENTY THOUSAND DOLLARS exactly (U.S. $820,000.00) plus interest.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower : Assignment of Rents and Profits; Security Agreement and Protection of Lenders' Security Rider.

**(I) ."Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** mean those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **LOS ANGELES**, which currently has the address of **12711 CASTLEFORD LANE, CERRITOS, CA 90703** and fully described as:

**SEE LEGAL DESCRIPTION ATTACHED**               EXHIBIT A

**APN # 7044-032-012**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial

payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: First - interest due under the Note; Second - principal due under the Note; Third - amounts due under Section 3. However, should advances be made under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a onetime charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower is to provide and deliver evidence of insurance to lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made

promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9.   Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

**10.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment

of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender.

**Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.**

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20.  'Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.   Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Beneficiary may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or implied under California Civil Code Section 2924g(b). All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with

the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22.    The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**23.    Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.    Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25.    Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26.    Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to Business & Professions Code Section 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Civil Code Section 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**27.    Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**28.    Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29.    Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**30.    Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses

are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**31. Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**32. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

**33. Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

**34. 125% TITLE INSURANCE POLICY.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include delinquent interest, late charges, attorney fees, advances for insurance, taxes, etc. Borrower acknowledges this increase of coverage does result in a higher fee which Borrower shall bear for the Lender title insurance policy.

**35. Property Assessed Clean Energy ("PACE") (or similar type program).** All Property Assessed Clean Energy ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/loan becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed under Section 21 of this Security Instrument.

**36. SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Promissory Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Promissory Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Promissory Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Promissory Note contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_10/17/17_

SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower          /Date

_____                    _____
– Co-Borrower                                                                                    /Date

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Los Angeles_____ )

On _October 17th, 2017_ before me, _Li Lee Tso, a Notary Public_
(insert name and title of the officer)

personally appeared _MARGARITA RAMIREZ_ _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LI LEE TSO
Commission # 2052402
Notary Public - California
Orange County
My Comm. Expires Jan 15, 2018

Signature _____          (Seal)

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:          THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO
REQUIRE PAYMENT OF THE LENDER'S ATTORNEY'S FEES IN BANKRUPTCY CASES.

THIS PROTECTION OF LENDER'S SECURITY RIDER is made OCTOBER 16, 2017, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to EXHIBIT D (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: **12711 CASTLEFORD LANE, CERRITOS, CA 90703** - Property address.

AMENDED COVENANT. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
In addition to the uniform covenant contained in section 8 of the Security Instrument, the following information is added:

8. Protection of Lender's Security. If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law.

Any amounts disbursed by Lender pursuant to this Section 8, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 8 shall require Lender to incur any expense or take any action hereunder.

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDER.

10/17/17

SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower          /Date

—————————————————————————————                              ————————————————
— Co-Borrower                                                                                           /Date

# RIDER TO DEED OF TRUST
# ASSIGNMENT OF RENTS AND PROFITS
# AND SECURITY AGREEMENT

**THIS RIDER** is made this OCTOBER 16, 2017 and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to SUPERIOR LOAN SERVICING, as Trustee for the benefit of EXHIBIT D ~ (collectively, "Lender") and covering the Property described in the Deed of Trust and located at **12711 CASTLEFORD LANE, CERRITOS, CA 90703.**

### 1. Assignment of Rents, Revenues and Profits

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust. Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b) Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

### 2. Security Agreement

This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) any and all items of property specified above as part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under Section 9334 and/or 9604 California Uniform Commercial Code.

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under The California Uniform Commercial Code, including, Section 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1)  the replacements for such items of personal property or fixtures are of equivalent value and quality;

(2)  Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3)  at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code Sections 9334 and/or 9604.

**IN WITNESS WHEREOF**, Borrowers have executed this Rider as of the date first above written.

10/17/17

SOLUZION, INC. A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower          /Date

– Co-Borrower                                                                                    /Date

# RIDER TO DEED OF TRUST

The following provisions are a part of and incorporated into that certain Deed of Trust and Assignment of Rents dated as of OCTOBER 16, 2017, by and between SOLUZION, INC., A CALIFORNIA CORPORATION ("Trustor"), SUPERIOR LOAN SERVICING ("Trustee") and EXHIBIT D ("Beneficiary").

### Assignment of Rents and Profits

(a) **Present Assignment.** All of Trustor's interest in any leases or other occupancy agreements pertaining to the Property now existing or hereafter entered into, and all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all prepaid rents and security deposits (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note and under this Deed of Trust subject to the rights of residential tenants under California Civil Code Section 1950.5(d). Beneficiary waives the right to exercise the rights and powers assigned to Beneficiary herein and agrees not to revoke such waiver until and unless an event of acceleration (as set forth in Section 4 of the Deed of Trust) occurs. It is understood and agreed that neither the foregoing assignment of Rents and Profits to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies hereunder shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Beneficiary, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property. Upon the occurrence of any event of default, this shall constitute a direction to and full authority to each lessee under any lease to pay all Rents and Profits to Beneficiary without proof of the default. Trustor hereby irrevocably authorizes each lessee to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any Rents and Profits due or to become due.

(b) **Application of Rents.** Trustor shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, and debt service on the indebtedness secured hereby, before using the Rents and Profits for Trustor's personal use or any other purpose not for the direct benefit of the Property.

(c) **Notice to Tenants.** Trustor shall at all times perform the obligations of lessor under all such leases. Trustor shall at any time or from time to time, upon request of Beneficiary, transfer and assign to Beneficiary in such form as may be satisfactory to Beneficiary, Trustor's interest in any lease, subject to and upon the condition, however, that prior to the occurrence of any event of default hereunder Trustor shall have a license to collect and receive all Rents and Profits under such lease upon accrual, but not prior thereto, as set forth in Paragraph (a) above. Whenever requested by Beneficiary, Trustor shall furnish to Beneficiary a certificate of Trustor setting forth the names of all lessees under any leases, the terms of their respective leases, the space occupied, the rents payable thereunder, and the dates through which any and all rents have been paid.

(d) **Attornment.** Each lease for any part of the Property shall make provision for the attornment of the lessee thereunder to any person succeeding to the interest of Trustor as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

(e) **Direct Creditor.** Beneficiary shall be deemed to be the creditor of each lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor-relief proceedings affecting such lessee (without obligation on the part of Beneficiary, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein). Beneficiary shall have the right to assign Trustor's right, title and interest in any leases to any subsequent holder of this Deed of Trust or any participating interest therein or to any person acquiring title to all or any part of the Property through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Beneficiary. Beneficiary shall have the authority, as Trustor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Trustor and to bind Trustor on all papers and documents relating to the operation, leasing and maintenance of the Property.

(f) **Miscellaneous.** _____

SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower        10/17/17    /Date

_____

– Co-Borrower                                                                /Date

# Exhibit D

LENDER VESTING

UNITED STATES REAL ESTATE CORPORATION, AS TO AN UNDIVIDED 560,000/820,000 INTEREST; UNITED STATES REAL ESTATE CORPORATION DEFINED BENEFIT PENSION, AS TO AN UNDIVIDED 260,000/820,000 INTEREST

| Lenders | % Ownership | Amount |
|---|---|---|
| UNITED STATES REAL ESTATE CORPORATION | 68.29% | $560,000.00 |
| UNITED STATES REAL ESTATE CORPORATION DEFINED BENEFIT PENSION | 31.71% | $260,000.00 |

# EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CERRITOS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 48 OF TRACT NO 32894, IN THE CITY OF CERRITOS, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 877, PAGE(S) 53 THROUGH 56 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LAND WITHIN THE LINES OF THE LAND DESCRIBED IN THE DEED RECORDED OCTOBER 22, 1971, AS INSTRUMENT NO 342, OFFICIAL RECORDS, ALL OIL, GAS, MINERALS AND MINERAL RIGHTS LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE THEREOF, WITHOUT THE RIGHT ENTRY THERETO ABOVE A DEPTH OF 500 FEET TOGETHER WITH PASS-THROUGH RIGHTS BELOW A DEPTH OF 500 FEET, AS GRANTED TO DONALD P PALM, A SINGLE MAN, DIANA P HICHMAN, A MARRIED WOMAN, AND CAROLYN J CASTAMON, A MARRIED WOMAN, ALL AS TO AN UNDIVIDED ONE-HALF INTEREST, AND IRA C HOLMES AND MILDRED HOLMES, HIS WIFE, DENZEL L HOLMES AND BLANCHE HOLMES, HIS WIFE, AND FREEMAN METZGER AND MARTHA METZER, HIS WIFE, ALL AS TO AN UNDIVIDED ONE-HALF INTEREST BY DEED RECORDED OCTOBER 22, 1971 AS INSTRUMENT NO 342 IN BOOK D-5231, PAGE 706, OFFICIAL RECORDS.

APN: 7044-032-012

# EXHIBIT 3



**This page is part of your document - DO NOT DISCARD**



## 20190301360



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/05/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |



**L E A D S H E E T**



**201904051050021**

**00016458242**



**009735520**

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E08_190405_600

E464443

RECORDING REQUESTED BY:
Superior Loan Servicing


WHEN RECORDED MAIL TO:
**Superior Loan Servicing**
**24013 Ventura Blvd., Suite 200**
**Calabasas, CA 91302**
**Loan No.: SLS-102717**

_____ [Space Above This Line For Recording Data] _____

**Property: 12711 Castleford Lane, Cerritos, CA 90703**                              **APN: 7044-032-012**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to, **USRE Trust, as to an undivided $259,479.97 / 31.70317% interest** as it appears under that certain Deed of Trust dated **10/16/2017** executed by **Soluzion, Inc., A California Corporation** Trustor, to **Superior Loan Servicing**, Trustee, and recorded as DOC **20171242926** on **10/30/2017** in the Recorder's office of the County of **Los Angeles County**, State of **California**, describing land therein as:

## AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

**United States Real Estate Corporation Defined Pension Plan as to an undivided 31.70317% interest transfers $259,479.97 / 31.70317% interest**


_Ch Mk_          _3/29/19_
**By: Charmaine Mark**                    /Date

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_

On _Mar 29th 2019_ before me _Devin Effertz_ , **Notary Public** personally appeared
_Charmaine Mark_ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Signature of Officer                    (Seal)

DEVIN EFFERTZ
Notary Public - California
Los Angeles County
Commission # 2237018
My Comm. Expires May 3, 2022

ACCOMODATIION
This Document delivered to Recorder
As an accomodation only at the
Express request of the parties hereto.
It has not been examined as to
Its effect or validity

Page 1 of 1

# EXHIBIT 4

## AFFIDAVIT REGARDING LOAN PURPOSE

This affidavit regarding loan purpose is dated for reference purposes on this day of OCTOBER 16, 2017. The undersigned borrower(s) ("Borrower") hereby certify and warrant to **RUSHMYFILE, INC. (CA BRE #01893519)** ("Broker") and to any lender where Broker may arrange a secured loan ("Loan") with Borrower the following facts:

1.  This Loan for Borrower shall be secured by that real property located at **12711 CASTLEFORD LANE, CERRITOS, CA 90703 and including LOS ANGELES County APN: 7044-032-012,** (the "Collateral"). The Collateral **is a dwelling held for investment purposes and is not currently or intended to be occupied by Borrower;**

2.  The proceeds of the Loan shall be for either business, commercial or investment purposes;

3.  The proceeds of the Loan shall not be used primarily for agricultural, farming, personal, family, household or other consumer purposes;

4.  Any debts, mortgages or costs, which may be paid from such loan proceeds, shall be solely in connection with such business, commercial or investment purposes and not in connection with any agricultural, farming, personal, family, household or other consumer purpose.

Borrower understands that Broker and lender shall each rely upon and accept as true the representations made in this Affidavit and each such representation shall be conclusively presumed to have been relied on by Broker and lender, regardless of any investigation made or information possessed by Broker and/or lender. Each warranty, representation and agreement contained in this Affidavit is true and correct on the date hereof and shall be automatically deemed repeated and reaffirmed on the closing and funding of the secured loan. The warranties, representations and agreements set forth herein shall be cumulative and in addition to any and all other warranties, representations and agreements which Borrower shall give, or cause to be given, to Broker and/or lender, either now or hereafter.

**BORROWER IS AWARE OF THE PENALTIES OF PERJURY, WHICH INCLUDE THE EXECUTION OF A FALSE AFFIDAVIT, PURSUANT TO 18 U.S.C. SECTION 1621, AND THAT THE EXECUTION OF A FALSE AFFIDAVIT IS A CRIMINAL ACT PURSUANT TO APPLICABLE LAW.**

Witness my hand this _17_ day of _October_ , 2017

_____                                    10/17/17
SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower
                                                                              /Date

_____                                    10/17/17
MARGARITA RAMIREZ – Co-Borrower                                   /Date


## ATTACH NOTARY CERTIFICATE

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California,
County of _____ Los Angeles _____ )

On _October 17th, 2017_ before me, _Li Lee Tso, a Notary Public_
(insert name and title of the officer)

personally appeared _MARGARITA RAMIREZ_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

LI LEE TSO
Commission # 2052402
Notary Public - California
Orange County
My Comm. Expires Jan 15, 2018

LI LEE TSO
Commission # 2052402
Notary Public - California
Orange County
My Comm. Expires Jan 15, 2018

Loan No: RMF4019796

## CERTIFICATE OF BUSINESS PURPOSE OF LOAN

Borrower certifies to RUSHMYFILE, INC. ("Mortgage Loan Originator") as follows:

1. I have applied to Mortgage Loan Originator for a trust deed loan of $820,000.00 secured by the real property at **12711 CASTLEFORD LANE, CERRITOS, CA 90703** (the "Loan").

2. Mortgage Loan Originator has stressed to me the importance of knowing the primary purpose of the Loan. I know the duties and obligations of the Mortgage Loan Originator vary considerably depending upon whether the Loan is a "Consumer Loan" (i.e., the Loan proceeds are primarily for personal, family, or household purposes), or the Loan is a "Business Purpose Loan".

3. I have represented to Mortgage Loan Originator that all the proceeds of the Loan, exclusive of commissions, fees, costs, expenses incurred to obtain the Loan, are for the following purposes:

| Purpose | Approximate Amount |
|---|---|
| A. INVESTMENT PROPERTY PURCHASE | $ 820,000. |
| B. | $ |
| C. | $ |
| D. | $ |

4. The primary purpose of the Loan is to finance the business enterprise known as
   _____ N/A _____, i.e., in the business of
   _____ .

5. No part of the Loan proceeds are intended to be used for the non-business (i.e. consumer) purpose except:  N A

| Purpose | Approximate Amount |
|---|---|
| A. | $ |
| B. | $ |

The Lender(s), MLB/MLO, assignees and successors of the Lender(s) or of the Mortgage Loan Originator (MLB/MLO), as applicable, may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

_____                          10/17/17
SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower       /Date

_____                          10/17/17
MARGARITA RAMIREZ – Co-Borrower                            /Date

**RUSHMYFILE, INC.**
**380 BEACH RD., SUITE B, BURLINGAME, CA 94010**
**650-353-2017**

**BRE BROKER LIC. #01893519**                                    **NMLS #396905**

## LOAN PURPOSE AND REAL PROPERTY SECURITY DECLARATION

Loan Number: **RMF4019796**                                    Proposed Loan Amount: **$820,000.00**

**Address of Property(ies) that will secure your loan:** 12711 CASTLEFORD LANE, CERRITOS, CA 90703 ("Property"). If other properties will be used as security for the loan, complete a separate **[Supplemental Real Property Loan Security Declaration for each property securing the loan.]**

Each of the undersigned (collectively **"Borrower")** has applied for the Loan to be secured by the property(ies) set forth on one or more separate but related and incorporated Real Property Loan Security Declarations. Each Borrower is the person who will sign a promissory note ("Note") and deed(s) of trust ("Deed(s) of Trust") which will encumber the property(ies). **"Lender"** as used herein includes the original lender who funds the Loan as well as others to whom Lender may transfer all or a part of the ownership of the Loan.

Borrower represents, warrants, and declares to Lender that:

1.  The Borrower has applied to Lender for the Loan to be secured by a Deed(s) of Trust on the Property. Borrower understands the importance of truthfully and accurately disclosing to Lender the information requested in this declaration including, but not limited to, the purpose(s) for which Borrower intends to use the Loan proceeds. **Borrower further understands Lender, its brokers, agents, and employees will rely on Borrower's representations in this declaration and in any Supplemental Real Property Loan Security Declarations to determine, among other things: (1) whether to make the Loan; (2) the terms and conditions of the Loan; (3) what disclosures may be required; and (4) whether Lender possesses the necessary license(s) to make or arrange the Loan.**

2.  Borrower is: ☒ an individual (natural person); ☒ a corporation, limited liability corporation, partnership, trust, estate, church, union, agency, association, cooperative, organization, government or governmental subdivision ("Entity"); or, ☒ both. For any Borrower that is an Entity (not an individual), please complete below the name of the Entity, and under capacity state the name and position pursuant to which the undersigned is authorized to act (for example, "Jane Smith" as president, secretary, managing member, general partner, trustee, etc.)

| EACH BORROWER'S NAME<br><br>(As you want it to appear on title and on the loan documents.) | NAMES & CAPACITY OF PERSONS SIGNING FOR AN ENTITY BORROWER (e.g. individual, general partner, managing member, president, secretary, etc.) |
| --- | --- |
| **Borrower/Entity:** SOLUZION, INC., A CALIFORNIA CORPORATION | MARGARITA RAMIREZ / CEO |
| **Borrower/Entity:** MARGARITA RAMIREZ | INDIVIDUAL |
|  |  |

3.  **Borrower intends to use the Loan proceeds for the purposes and in the amounts set forth below. INSTRUCTIONS: Borrower must complete the following in his or her own hand in his or her own words. Please print legibly in ink.** Itemize separately **all** payoffs of existing mortgages or liens. Attach additional pages if and as needed to provide a complete and accurate explanation. For each purpose or intended use of the Loan proceeds, please indicate the "USES" as personal="P", Business="B", or Agricultural="A".

**"Personal use or purpose"** loans are primarily for a "personal, family or household purpose or use." Such loans include, but are not limited to, loans to purchase, remodel, repair or improve a principal residence, a vacation home, or personal vehicle or boat, to purchase furniture, furnishings, appliances, or other consumer goods for personal use; to pay, refinance or consolidate personal or family debt or credit cards; or for educational expenses, vacations, and medical expenses. These are often called "consumer loans" and are for a "personal purpose or use."

**"Business use or purpose"** loans include, but are not limited to, loans to purchase, repair or improve real property for use in the Borrower's business; to acquire, improve or maintain certain non-owner occupied rental property; to purchase, improve or repair tools, equipment, machinery, fixtures or furnishings used in Borrower's business; for operating capital (e.g. employee salaries) or to purchase or pay for business inventory, supplies, rent, taxes, insurance, and other related expenses; or to pay off, refinance or consolidate business debts.

**"Agricultural purpose"** loans are for planting, propagating, nurturing, harvesting, catching, storing, exhibiting, marketing, transporting, processing or manufacturing food, beverages (including alcoholic beverages), flowers, trees, livestock, poultry, bees, wildlife, fish or shellfish by a natural personal engaged in farming, fishing or growing crops, flowers, trees, livestock, poultry, bees or wildlife.

| USE: Personal ="P" Business ="B" Agricultural="A" | ITEMIZED PURPOSE (INTENDED USE) OF NET LOAN PROCEEDS (Further Explanation of "P," "B," and/or "A") | AMOUNT (Total should equal the approximate net loan proceeds) |
|---|---|---|
| B | INVESTMENT PROPERTY PURCHASE | 820,000- |
| | | |
| | | |
| | **TOTAL** | 820,000 |

**If the proposed loan amount changes from the amount stated above, Borrower agrees to immediately, and before the close of escrow, notify Lender of any changes from those set forth above in the type and proportion of intended use of Loan proceeds.**

4.  Are the Loan proceeds to be used primarily to acquire, improve, or maintain rental property? ☒ Yes ☐ No

    If your answer is "yes," will Borrower or a relative or family member of Borrower occupy any residential housing unit on the property? ☐ Yes ☒ No

5.  Part or all of the Loan proceeds ☐ will ☒ will not be used for demolition or construction of improvements on the Property.

6.  The Property [pick one]:

    ☒ Is comprised of only residential units. The number of residential units is: ___1___ .

    ☐ Is comprised of only commercial, industrial, agricultural, retail property and/or vacant land.

    ☐ Is comprised of mixed use property (part residential and part commercial, retail or industrial units). The Property has [state number] _____ residential units and _____ non-residential units.

7.  I do ☐ do not ☒ intend to occupy any housing unit on the Property as my personal residence if and when the Loan closes.
    **[Check "I do" if any Borrower will use the Property as his/her personal residence.]**

8. Each of the undersigned Borrower's current principal residence is [state address]:

| EACH BORROWER'S NAME | CURRENT PRINCIPAL ADDRESS |
|---|---|
| SOLUZION, INC., A CALIFORNIA CORPORATION | 16731 E. TUDOR STREET, COVINA, CA 91722 |
| MARGARITA RAMIREZ | 16731 E. TUDOR STREET, COVINA, CA 91722 |
| | |

9. If the Property is wholly or partially residential rental property **[pick all that apply]:**

☒ It is rented to a third party (not a relative or family member) who pays, or will pay, fair market value rent.

☐ It is occupied by a relative or family member who pays, or will pay, fair market value rent.

☐ It is occupied by a relative or family member who does (or will) not pay rent or who pays (or will pay) less than fair market value.

☐ Not applicable because the Property does not contain a residential rental unit.

10. If the property is commercial, industrial, agricultural, retail property, vacant land or mixed use property or mixed use property **[check all applicable boxes]:**

☐ Borrower currently rents it to a third party to produce income.

☐ Borrower currently uses it in Borrower's business.

☐ It is currently vacant land held exclusively for investment (i.e., for appreciation and resale) and not for any personal use.

☐ It is currently vacant land acquired exclusively for development and resale and not for personal use.

☐ It is currently vacant land upon which Borrower intends to build a personal residence or vacation home in the future.

Other: _____ .

11. The Property is ☐ is not ☒ agricultural property which **[check all applicable boxes]:**

☐ Is comprised of 25 or more acres of land; and,

Will ☐ Will not ☒ be used primarily for "agricultural purposes." (See **INSTRUCTION: above on "Agricultural purpose" loans.)**

12. Borrower has ☐ has not ☒ attached a separate Supplemental Real Property Loan Security Declaration for each property securing the loan other than the above listed Property. **[check applicable box]:**

THIS DECLARATION IS PART OF YOUR LOAN APPLICATION. PLEASE MAKE SURE THE STATEMENTS ABOVE, AS COMPLETED, ARE TRUE AND ACCURATE. UNTRUE OR FALSE STATEMENTS MAY SUBJECT YOU TO CIVIL OR CRIMINAL PENALTIES.

**NO UNDERSIGNED HAS COMPLETED ANY PORTION OF THIS FORM BASED UPON SUGGESTIONS OR DIRECTION FROM LENDER, LENDER'S AGENTS OR ANY BROKER, LOAN AGENT AND/OR MORTGAGE LOAN ORIGINATOR REGARDLESS OF WHOM THE BROKER OR LOAN AGENT CLAIMS TO REPRESENT.**

Each undersigned declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at ___Corritos___ (City), California on the __17__ day of __October__ , 20__17__

_____

SOLUZION, INC. A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO – Borrower

_____

MARGARITA RAMIREZ – Co-Borrower

Loan No: RMF4019796

## DECLARATION OF NON-OWNER OCCUPANCY

Borrower certifies to RUSHMYFILE, INC. ("Originator") as follows:

1. I have applied to Originator for a trust deed loan of $820,000.00 secured by the real property at **12711 CASTLEFORD LANE, CERRITOS, CA 90703** (the "property").

2. Originator has stressed to me the <u>importance</u> of knowing whether I occupy or intend to occupy the Property as my principal residence.

3. I have <u>represented</u> to Originator and again <u>represent</u> to Originator that:

A. My true and only principal residence is located at:
   16731 E. TUDOR STREET, COVINA, CA 91722

---

B. The Property that will secure this loan is not my principal residence.

C. I have no intention of ever making the Property securing the Loan my principal residence.

The lender, broker, assignees and successor of the Originator may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

Dated: 10/17/17

SOLUZION, INC., A CALIFORNIA CORPORATION, BY MARGARITA RAMIREZ, CEO

Dated: 10/17/17

MARGARITA RAMIREZ

# EXHIBIT 5



**This page is part of your document - DO NOT DISCARD**



# 20171242925



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/30/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 1,386.00 |
| OTHER: | 0.00 |
| PAID: | 1,414.00 |



**L E A D S H E E T**



**201710300170136**

**00014435979**



**008689693**

**SEQ:
01**

.

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E534119*



105_2504364_4__

Recording requested by

**PACIFIC COAST TITLE COMPANY**

RECORDING REQUESTED BY:
Gold Point Escrow, Inc.
Order No. 10069727-22
Escrow No. 3136-LT
Parcel No. ~~7044-32-12~~
7044-032-012

AND WHEN RECORDED MAIL TO:

SOLUZION, INC.
12711 CASTLEFORD LANE
CERRITOS, CA 90703

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS **$1,386.00** and CITY $

  **x**  computed on full value of property conveyed, or
  ☐  computed on full value less liens or encumbrances remaining at the time of sale.
  ☐  unincorporated area:      **x**  **Cerritos,** and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Robert C Yang and Lai Shu-Jen Yang, Husband and Wife as Joint Tenants**

hereby GRANT(S) to   **Soluzion, Inc., a California Corporation**

the following described real property in the County of Los Angeles, State of California:
Lot 48 of Tract No. 32894  in the City of Cerritos, County of Los Angeles, State of California, as per Map recorded in Book 877 Page(s) 53 through 56 Inclusive of Maps, in the Office of the County Recorder of said County.
More commonly known as: **12711 Castleford Lane, Cerritos, CA  90703**      **EXHIBIT A**

Date   October 16, 2017

_____
Robert C Yang

_____
Lai Shu-Jen Yang

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_  } S.S.

On _October 17th 2017_, before me, _LJ Lee Tso, a Notary Public_
personally appeared **Robert C Yang and Lai Shu-Jen Yang**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

LJ LEE TSO
Commission # 2058402
Notary Public - California
Orange County
My Comm. Expires Jan 16, 2018

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                               )

County of _Los Angeles_                    )

On _October 17, 2017_ before me, _Li Lee Tso, a Notary Public_,

  Date                                    Here insert Name and Title of the Officer

personally appeared _Robert C. Yang and Lai Shu-Jen Yang_

                                        Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

                Signature of Notary Public

LI LEE TSO
Commission # 2052402
Notary Public - California
Orange County
My Comm. Expires Jan 15, 2018

Place Notary Seal Above

---------- OPTIONAL ----------

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _Grant Deed_     Document Date: _10-16-2017_

Number of Pages: _3_   Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____              Signer's Name: _____
☐ Corporate Officer — Title(s): _____       ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General             ☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact          ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator   ☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____                    ☐ Other: _____
Signer Is Representing: _____      Signer Is Representing: _____

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CERRITOS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 48 OF TRACT NO 32894, IN THE CITY OF CERRITOS, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 877, PAGE(S) 53 THROUGH 56 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LAND WITHIN THE LINES OF THE LAND DESCRIBED IN THE DEED RECORDED OCTOBER 22, 1971, AS INSTRUMENT NO 342, OFFICIAL RECORDS, ALL OIL, GAS, MINERALS AND MINERAL RIGHTS LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE THEREOF, WITHOUT THE RIGHT ENTRY THERETO ABOVE A DEPTH OF 500 FEET TOGETHER WITH PASS-THROUGH RIGHTS BELOW A DEPTH OF 500 FEET, AS GRANTED TO DONALD P PALM, A SINGLE MAN, DIANA P HICHMAN, A MARRIED WOMAN, AND CAROLYN J CASTAMON, A MARRIED WOMAN, ALL AS TO AN UNDIVIDED ONE-HALF INTEREST, AND IRA C HOLMES AND MILDRED HOLMES, HIS WIFE, DENZEL L HOLMES AND BLANCHE HOLMES, HIS WIFE, AND FREEMAN METZGER AND MARTHA METZER, HIS WIFE, ALL AS TO AN UNDIVIDED ONE-HALF INTEREST BY DEED RECORDED OCTOBER 22, 1971 AS INSTRUMENT NO 342 IN BOOK D-5231, PAGE 706, OFFICIAL RECORDS.

APN: 7044-032-012

# EXHIBIT 6

<u>Three Extension Agreement</u>

1st Extension Agreement (dtd. 10/08/2019, ext. to 01/01/2020)
2nd Extension Agreement (dtd. 11/05/2020, ext. to 11/01/2022)
3rd Extension Agreement (dtd. 11/22/2022, ext. to 01/01/2024)

# 1st Extension Agreement

*Loan No: SLS-102717*                                                  *Borrower: Soluzion, Inc*

## LOAN EXTENSION/MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **10/08/2019, UNITED STATES REAL ESTATE CORPORATION, AS TO AN UNDIVIDED 560,000/820,000 INTEREST; UNITED STATES REAL ESTATE CORPORATION DEFINED BENEFIT PENSION, AS TO AN UNDIVIDED 260,000/820,000 INTEREST** ("Lender") and **SOLUZION, INC., A CALIFORNIA CORPORATION.**

## RECITALS

A.   Lender has made a loan (the "Loan") to Borrowers evidenced by a promissory note (the "Note") in the amount of **$820,000.00** dated **10/16/2017** which is secured by a Deed of Trust   (the "Deed of Trust")   dated **10/16/2017** recorded on **10/30/2017** as Doc# **20171242926** Book; Page; of Official Records of **Los Angeles County**, California (collectively the Note and the Deeds of Trust hereinafter shall be referred to as the "Loan Documents").

B.   By its terms, the Note became due on **11/01/2019** the "Maturity Date".

C.   Borrower desires to ☒extend the Maturity Date of the Note and/or ☐modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.   **Confirmation of Loan Amount.**  As of the date of this Agreement the principal due on the Loan is **$817,911.11**

2.   **Description of Modifications.**

(a) **Interest Rate.**    The interest rate shall be ☒unchanged or ☐ modified to **10.990%** per annum.

(b) **Maturity Date ("Due Date").**    The Maturity Date ☐shall remain the same or ☒is extended to **01/01/2020**, at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full.

3.      **Payments.**  Monthly payments in the amount of **$7,605.48** each shall continue to be made by the Borrower on the 1st day of each month until ~~01/01/2020~~, at which time all amounts of principal and interest shall be due and payable in full. ⤳ *11/01/2020*      ⌐DS⌐ *MR*

4.     **Inducement.**    As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing

There will be no balloon payment due between 01/01/2020 and 11/01/2020      ⌐DS⌐ *MR*

DocuSign Envelope ID: 2927EE07-8D09-7406-B0D0-B3592505488D
DocuSign Envelope ID: 6486680F-0EC4-41D5-A583-FA8AD70922B7

claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred.

5.    **No Further Commitments**.    Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6.    **Title Insurance and Costs**. At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Deed of Trust or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.

7.    **Fees and Costs**. **Borrower shall pay a nonrefundable fee of $495.00 to Superior Loan Servicing for Document Preparation. Borrower shall bring the loan current by paying the November payment of $7,605.48 late fees and charges of $1,982.31 all totaling $10,082.79.** All such costs, expenses and fees shall be paid in full as a condition precedent to the effectiveness of this Agreement **via cashier's check, money order, or wire**. Also required at time of signing is **Evidence of Current Insurance and Proof that Property Taxes are paid and current**

8.    **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

9.    **Miscellaneous.**

   (a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**.  In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**.  This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written.  This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto.  Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**.   The provisions of this Agreement are independent of and separable from each other.  If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**.  Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**.  Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**.  Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents.  Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby.  All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(h) **Remaining Terms Unmodified**.  Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(i) **Applicable Law; Interpretation**.  To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(j) **Effective Date**.  This Agreement shall become effective after all conditions as required herein have been satisfied.

DocuSign Envelope ID: 2327EE-07-18D02-7406-B0D0-B3502505188D
DocuSign Envelope ID: 6486680F-0EC4-41D5-A583-FB18D7206DA5

(k) **Time of the Essence**.  Time is of the essence in performing each and all of the terms of this Agreement.

10.        **Claims and Release**.  Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender.  It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the
> creditor does not know or suspect to exist in his favor at
> the time of executing the release which if known by him
> must have materially affected his settlement with the debtor."

11.        **Arbitration of Disputes**.     If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration.  Judgment on the arbitrator's award

DocuSign Envelope ID: 6486680F-0EC4-41D5-A583-B362505388D
DocuSign Envelope ID: 6486680F-0EC4-41D5-A583-B362505388D

may be entered in any court having jurisdiction.  Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration.  The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE:  IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.   YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL.   YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.  NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.
WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:                                        LENDER:

| INITIAL | INITIAL | INITIAL | INITIAL |
|---------|---------|---------|---------|

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date above written.
**BORROWERS**:

Soluzion, Inc

_____          11/13/2019          _____
Borrower  *Margarita Ramirez, CEO*          Date          Borrower          Date

# 2nd Extension Agreement

*Loan No: SLS-102717*                                    *Borrower: Soluzion, Inc*

<u>**LOAN EXTENSION/MODIFICATION AGREEMENT**</u>

THIS AGREEMENT ("Agreement") is made **11/05/2020**, **UNITED STATES REAL ESTATE CORPORATION, AS TO AN UNDIVIDED 68.292% INTEREST; USRE TRUST, AS TO AN UNDIVIDED 31.707% interest**("Lender") and **SOLUZION, INC., A CALIFORNIA CORPORATION.**

# RECITALS

A.    Lender has made a loan (the "Loan") to Borrowers evidenced by a promissory note (the "Note") in the amount of **$820,000.00** dated **10/16/2017** which is secured by a Deed of Trust    (the "Deed of Trust")    dated **10/16/2017** recorded on **10/30/2017** as Doc# **20171242926** Book; Page; of Official Records of **Los Angeles County**, California (collectively the Note and the Deeds of Trust hereinafter shall be referred to as the "Loan Documents").

B.    By its terms, the Note became due on **11/01/2019** the "Maturity Date".

C.    Borrower desires to ☒extend the Maturity Date of the Note and/or ☐modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.    <u>**Confirmation of Loan Amount.**</u>  As of the date of this Agreement the principal due on the Loan is **$816,714.86**

2.    <u>**Description of Modifications.**</u>

(a) <u>**Interest Rate.**</u>    The interest rate shall be ☒unchanged or ☐ modified to **10.990%** per annum.

(b) <u>**Maturity Date ("Due Date").**</u>    The Maturity Date ☐shall remain the same or ☒is extended to **11/01/2022**, at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full. (Previously extended from **11/01/2019** to **11/01/2020** on **12/19/2019**)

3.    <u>**Payments.**</u>  Monthly payments in the amount of **$7,605.48** each shall continue to be made by the Borrower on the 1st day of each month until **11/01/2022**, at which time all amounts of principal and interest shall be due and payable in full.

4.    <u>**Inducement.**</u>    As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing

claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred.

5.     **No Further Commitments**.     Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6.     **Title Insurance and Costs**.   At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Deed of Trust or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.

7.     **Fees and Costs**.  **Borrower shall pay a nonrefundable fee of $495.00 to Superior Loan Servicing for Document Preparation.**  All such costs, expenses and fees shall be paid in full as a condition precedent to the effectiveness of this Agreement **via cashier's check, money order, or wire**. Also required at time of signing is **Evidence of Current Insurance and Proof that Property Taxes are paid and current**

8.     **Relief From Stay**.   Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

9.     **Miscellaneous.**

(a) **No Waiver**.   Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**.   In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**.    This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written.  This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto.  Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**.    The provisions of this Agreement are independent of and separable from each other.  If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**.  Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**.  Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**.  Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents.  Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby.  All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(h) **Remaining Terms Unmodified**.  Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(i) **Applicable Law; Interpretation**.  To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(j) **Effective Date**.  This Agreement shall become effective after all conditions as required herein have been satisfied.

(k) **Time of the Essence**.  Time is of the essence in performing each and all of the terms of this Agreement.

10.         **Claims and Release**.  Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute,

or demand, including any claim concerning lender liability which Borrower has or may have against Lender.  It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the
> creditor does not know or suspect to exist in his favor at
> the time of executing the release which if known by him
> must have materially affected his settlement with the debtor."

11.   **Arbitration of Disputes**.     If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration.  Judgment on the arbitrator's award may be entered in any court having jurisdiction.  Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow.

Any proceeding for judicial foreclosure shall not be subject to arbitration.  The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE:  IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.   YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL.   YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.  NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.
WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:                                    LENDER:
_____        _____      _____       _____
       INITIAL                    INITIAL                   INITIAL                    INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

        **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date above written.
**BORROWERS**:

Soluzion, Inc

_____11/6/20        _____
Borrower  *Margarita Ramirez, CEO*         Date        Borrower                               Date

# 3rd Extension Agreement

*Loan No: SLS-102717*                                    *Borrower: Soluzion, Inc*

## LOAN EXTENSION/MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **11/22/2022**, **United States Real Estate Corporation as to an undivided 68.292683% Interest, and USRE Trust as to an undivided 31.707317%** ("Lender") and **SOLUZION, INC., A CALIFORNIA CORPORATION.**

# RECITALS

A.    Lender has made a loan (the "Loan") to Borrowers evidenced by a promissory note (the "Note") in the amount of **$820,000.00** dated **10/16/2017** which is secured by a Deed of Trust    (the "Deed of Trust")    dated **10/16/2017** recorded on **10/30/2017** as Doc# **20171242926** Book; Page; of Official Records of **Los Angeles County**, California (collectively the Note and the Deeds of Trust hereinafter shall be referred to as the "Loan Documents").

B.    By its terms, the Note became due on **11/01/2019** the "Maturity Date".

C.    Borrower desires to ☒extend the Maturity Date of the Note and/or ☐modify the terms of the Note and Lender is willing to accommodate Borrower's desire, on the terms and conditions contained herein.

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1.    **Confirmation of Loan Amount.**  As of the date of this Agreement the principal due on the Loan is **$814,458.80**

2.    **Description of Modifications.**

(a) **Interest Rate.**    The interest rate shall be ☒unchanged or ☐ modified to **10.990%** per annum.

(b) **Maturity Date ("Due Date").**    The Maturity Date ☐shall remain the same or ☒is extended to **11/01/2024**, at which time all sums remaining unpaid under the Loan Documents shall be due and payable in full. Loan was previously extended on 10/08/2019 from 01/01/2020 to 11/01/2022

3.    **Payments.**    Beginning on **10/01/2022** monthly payments in the amount of **$7,605.48** shall continue to be made by the Borrower on the 1st day of each month until **11/01/2024**, at which time all amounts of principal and interest shall be due and payable in full.

4.    **Inducement.**    As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein,

represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred.

5.      **No Further Commitments**.      Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6.      **Title Insurance and Costs**.  At Lender's option Borrower shall provide Lender at Borrower's cost a 110.5 endorsement to its title insurance policy assuring Lender that nothing contained herein shall affect or impair the lien of the Deed of Trust or its priority. Borrower shall pay all costs and expenses incurred by Lender in connection with this Agreement, including all title and recording fees.

7.      **Fees and Costs**.  **Borrower shall pay a total of $15,765.96 to Superior Loan Servicing for (See Breakdown Below)** All such costs, expenses and fees shall be paid in full as a condition precedent to the effectiveness of this Agreement **via cashier's check, money order, or wire**. Also required at time of signing is **Evidence of Current Insurance and Proof that Property Taxes are paid and current. Superior Loan Servicing's Portion of Late fees up until 11/1/2022 shall be paid at loan pay off in the amount of $3,131.02 (lender has waived their portion of late fees)**

| Fees | Total |
|---|---|
| Doc Prep Fee | $495.00 |
| October and November payment @7,605.48 each | $15,210.96 |
| Unpaid Wire fees | $60.00 |
| **Total** | **$15,765.96** |

8.      **Relief From Stay**.  Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

9.   **Miscellaneous.**

(a) **No Waiver**.  Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**.  In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**.  This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written.  This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto.  Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**.   The provisions of this Agreement are independent of and separable from each other.  If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**.  Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**.  Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**.  Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents.  Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby.  All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(h) **Remaining Terms Unmodified**.  Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(i) **Applicable Law; Interpretation**.  To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(j) **Effective Date**.  This Agreement shall become effective after all conditions as required herein have been satisfied.

(k) **Time of the Essence**.  Time is of the essence in performing each and all of the terms of this Agreement.

10.         **Claims and Release**.  Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender.  It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

"A general release does not extend to claims which the
creditor does not know or suspect to exist in his favor at
the time of executing the release which if known by him
must have materially affected his settlement with the debtor."

11. **Arbitration of Disputes**.    If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration.  Judgment on the arbitrator's award may be entered in any court having jurisdiction.  Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration.  The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE:  IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.   YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL.   YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.  NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.
WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:                                      LENDER:
_____MR_____    _____MR_____    _____    _____
INITIAL                   INITIAL                   INITIAL                   INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

                    **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date above written.
**BORROWERS**:

Soluzion, Inc

_12/13/22_____

Borrower    *Margarita Ramirez, CEO*        Date        Borrower                                Date

# EXHIBIT 7

**Last updated Friday September 06, 2024**

**Assessor ID Number:** 7044-032-012

Your annual tax information for the 2024-2025 fiscal year will not be available until the end of September 2024. You will not be able to make online payments and should not mail in any payments for your 2024-2025 annual taxes until the annual tax information is available online or you receive your Annual Property Tax Bill in the mail. We will begin mailing the Annual Property Tax Bills in October 2024. If you do not receive a bill by November 1, you can call us on our automated voice mail service at 1(213) 893-1103 to request a Substitute Secured Property Tax Bill.

You can now subscribe to receive emails from the Treasurer and Tax Collector regarding special notices and upcoming events, such as annual property tax deadline reminders, office location updates and other news. To subscribe to receive these notices, go to Email Notification Service at **http://ttc.lacounty.gov/eNotify** and enter your information.

# Defaulted Tax Roll

**Last updated Friday September 06, 2024**

| | | | |
|---|---|---|---|
| AIN Number | 7044-032-012 | 5-Pay Account Number | |
| Default Year | 2020 | 5-Pay Status | |
| Redemption Amount | $116,152.75 | 5-Pay Installment Amount Due | |
| Monthly Penalty Amount | $1,161.37 | 5-Pay Due Date | |
| Amount Paid | $0.00 | 5-Pay Installment Paid | |
| Last Payment Date | | | |

**Message:**
STATE LAW REQUIRES THAT WE APPLY PAYMENTS TO COSTS, PENALTIES AND THE BALANCE TO TAXES. IF YOU HAVE QUESTIONS, PLEASE VISIT OUR **PUBLIC INQUIRIES** WEBPAGE.

Select Another Account

For help or inquiries regarding online payments, visit: **ttc.lacounty.gov/public-inquiries**
Our business hours are 8:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding **Los Angeles County holidays**.
Our office is located in the Kenneth Hahn Hall of Administration, 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012.

If you are having trouble using this site, it may be because you are using a slightly older internet browser or an unsupported internet browser.
See a **list of supported internet browsers**.

Assessor ID 7044-032-012; 12711 Castleford Lane, Cerritos, CA 90703

| | | | | | | 5 payment plan | $75 fee | | |
|---|---|---|---|---|---|---|---|---|---|
| Redemption Amount | $ 116,152.75 | | | | | | | | |
| Monthly Penalty | $ 1,161.37 | | | | | | | | |
| | $ 117,314.12 | USRE Corp | 68.29% | $ 80,113.81 | $ 16,022.76 | | 0 | | Check #3752 |
| | | USRE Trust | 31.71% | $ 37,200.31 | $ 7,440.06 | $ 75.00 | $7,515.06 | | Check #1044 |
| | | | | $ 117,314.12 | | | | | |

# EXHIBIT 8

FOR OFFICE USE ONLY
OPEN BY:

**AIN:**

## COUNTY OF LOS ANGELES
### TREASURER AND TAX COLLECTOR
KENNETH HAHN HALL OF ADMINISTRATION
225 NORTH HILL STREET, ROOM 109
P.O. BOX 512102
LOS ANGELES, CALIFORNIA 90051-0102
TELEPHONE (213) 974-2111 FAX (213) 620-7948

HOME PAGE
TTC.LACOUNTY.GOV

PROPERTY TAX PORTAL
PROPERTYTAX.LACOUNTY.GOV

# INSTALLMENT PLAN OF REDEMPTION APPLICATION
# (FIVE-PAY PLAN)

## -PLEASE READ CAREFULLY-

The Installment Plan of Redemption (Five-Pay Plan) is available if you are unable to pay your defaulted taxes in full. The plan allows you to pay your defaulted taxes over a five-year period. An account can be opened after the property is defaulted but **before** the fifth (5th) year following the defaulted date for residential property and the third (3rd) year following the defaulted date for non-residential residential commercial property (which includes vacant residential lots), or prior to the property becoming subject to the Tax Collector's power to sell on July 1st.

To open an account, you must pay a $75.00 fee and a minimum of 20 percent of the total amount necessary to redeem **-AND-** you must pay your current taxes on or before April 10th of each year of this plan. Interest is computed at the rate of 1.5 percent per month on the unpaid balance. **THERE WILL BE A $75.00 FEE CHARGED EACH TIME A FIVE-PAY PLAN IS OPENED.**

**TO KEEP THE PLAN FROM DEFAULTING, YOU MUST PAY THE ANNUAL PAYMENTS OF 20 PERCENT OR MORE, OF THE REDEMPTION AMOUNT, PLUS INTEREST -PLUS- YOUR CURRENT TAXES. IF YOU FAIL TO MAKE EITHER ONE OR BOTH OF THESE PAYMENTS ON OR BEFORE APRIL 10 OF EACH YEAR YOUR ACCOUNT WILL DEFAULT.**

Any payment instrument which is not honored by the bank (including a stop payment order) will automatically default the account. You may pay the total unpaid balance, plus accrued interest of 1.5 percent per month, anytime before the fifth and final payment is due.

If your account defaults for any reason, all prior amounts paid will be considered partial payments and credited toward prior year delinquent taxes and cannot be used as a credit for reopening another Five-Pay Plan. **A new Five-Pay Plan may not be opened until July 1st of the following fiscal year, if eligible.** Partial payments are applied in the following order: State mandated fees, costs, redemption penalties/interest and tax according to the oldest tax due. Payments for prior year taxes will not change the status of the tax default year nor impact the status of property that is deemed subject to the Tax Collector's power to sell after the property is defaulted but **before** the fifth (5th) year following the defaulted date for residential property and the third (3rd) year following the defaulted date for non-residential commercial property (which includes vacant residential lots).

If you are interested in opening a Five-Pay Plan, please complete this form and return it to the address listed above. It is strongly recommended that prior to applying for the Installment Plan of Redemption, you contact your lender or mortgage company to ensure it allows the Five-Pay Plan to pay tax defaulted taxes.

**IMPORTANT NOTE:** The County of Los Angeles retains the right to initiate foreclosure proceedings when assessments related to the Los Angeles County Energy Program (LACEP) become delinquent. Establishment of a Five-Pay Plan will not prevent foreclosure, which may by law include costs of collection and penalties.

If you have any questions, please contact our office at (213) 974-2111 or write to the above address. Please include your Assessor's Identification Number in all correspondence or have it ready when you call.

## THE OPENING PAYMENT MUST ACCOMPANY THIS APPLICATION

I have read and understand the above stated conditions for a Five-Pay Plan. I hereby agree to pay all current taxes when due each fiscal year and each Five-Pay Plan payment as billed. I further acknowledge that I may be charged penalties, fees and costs on the unpaid balance from the original default year should a default occur. If the property is sold, it is my responsibility to pay off the Five-Pay Plan and inform the buyer of the plan. I will notify the Treasurer and Tax Collector of any address changes. I have enclosed the 20 percent required payment to initiate the payment plan and the $75.00 application fee.

ASSESSOR'S IDENTIFICATION NUMBER: 7044 032 012

ASSESSEE OF RECORD: Soluzion, Inc., a CA Corporation, Margarita Ramirez
(PLEASE PRINT)

EMAIL ADDRESS: charmaine.mark@usrecorp.com     PHONE NUMBER: (310) 383-9558

MAILING ADDRESS: 33572 Pacific Coast Highway, Malibu, CA 90265

APPLICANT'S SIGNATURE: _Charmaine Mark_     DATE: Sept. 9, 2024

Rev. 09/2016

USRE TRUST
33572 PACIFIC COAST HWY
MALIBU, CA 90265-2309

1044

11-35/1210 CA
19110

DATE Sept. 9, 2024

PAY TO THE
ORDER OF   Los Angeles County Tax Collector          $ 7,515.06

— Seven thousand five hundred and fifteen —   06/100 DOLLARS

**BANK OF AMERICA**

ACH R/T 121000358
12711 Castleford Lane, Cerritos, CA 90703
FOR   APN: 7044 032 012
5-payment plan plus $75 fee

---

**United States Real Estate Corporation**
33572 Pacific Coast Highway
Malibu, California 90265
(310) 589-3344

BANK OF AMERICA, N.A.
POINT DUME
29171 HEATHERCLIFF ROAD
MALIBU, CA
310.456.6296

16-66/1220 1009

3751

Sept. 9, 2024

PAY TO THE
ORDER OF   Los Angeles County Tax Collector          $ 16,022.76

— Sixteen thousand and twenty-two dollars —   76/100 DOLLARS

12711 Castleford Lane, Cerritos, CA 90703
MEMO   APN: 7044 032 012
5 payment plan

AUTHORIZED SIGNATURE



33572 Pacific Coast Hwy.
Malibu, CA 90265

County of Los Angeles Treasurer
and Tax Collector
225 North Hill St., Room 109
P.O. Box 512102.
Los Angeles, CA 90051-0102

# EXHIBIT 9



**This page is part of your document - DO NOT DISCARD**

## 20240628448





**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/16/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



**202409160110114**

**00024797137**



**014894710**

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E442318

RECORDING REQUESTED BY:

**WFG National Default Services**

WHEN RECORDED MAIL TO:
**Asset Default Management, Inc.**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**

*25292946.AD*
_____

TS No.: **2024-01966**    Loan No.: **SLS-102717**

SPACE ABOVE THIS LINE FOR RECORDER'S USE
APN: **7044-032-012**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약시가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$95,843.53** as of **9/12/2024**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

TS No.: 2024-01966   Loan No.: SLS-102717

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**United States Real Estate Corporation**
**C/O Asset Default Management, Inc.**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**
**Phone: (818) 629-2272**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That  **Superior Loan Servicing** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/16/2017**, executed by  **Soluzion, Inc., A California Corporation**, as Trustor, to secure certain obligations in favor of  **United States Real Estate Corporation, As To An Undivided 560,000/820,000 Interest; United States Real Estate Corporation Defined Benefit Pension, As To An Undivided 260,000/820,000 Interest,** as beneficiary, recorded **10/30/2017**, as Instrument No. **20171242926**, in Book , Page ,  of Official Records in the Office of the Recorder of  **Los Angeles** County, California describing land therein as: As more fully described in said Deed of Trust

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$820,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
    **Installment of Principal and/or Interest plus impounds and/or advances which became due on 4/1/2024 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable. As a condition of reinstatement all property taxes and insurance must be current and proof must be provided.  A Loan Extension/Modification Agreement dated 10/08/2019. A Second Loan Extension/Modification Agreement dated 11/05/2020. A Third Loan Extension/Modification Agreement dated 11/22/2022.**

    That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 9/12/2024**

Superior Loan Servicing, by Asset Default Management, Inc., as
Agent for Trustee

By: _____
     Julie Taberdo, Sr. Trustee Sale Officer

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.5(b), §2923.55(c)

Borrower(s)/ Loan Number:   SLS-102717     Soluzion, Inc

Mortgage Servicer:          Superior Loan Servicing

Property Address:           12711 Castleford Lane PUD  Cerritos, CA 90703

T. S. No.                   *2024-01966*

☑ 1.  The mortgage servicer has contacted the borrower in person or by telephone pursuant to California Civil Code §2923.5(a)(2), §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

☐ 2.  No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

☐ 3.  The requirements of California Civil Code §2923.5, §2923.55 do not apply because the borrower, loan, or property does not meet the criteria in California Civil Code §2924.15 (a)

☐ 4.  The requirements of California Civil Code §2923.5, §2923.55 do not apply because the loan is not occupied by a tenant that meets the conditions described in California Civil Code §2924.15 et seq.

☐ 5.  Pursuant to California Civil Code §3273.10 the mortgage servicer declares it has denied a forbearance request, during the effective time period of 11/01/2022 and 12/31/2024. A copy of written denial notice(s) is attached.  A forbearance was ☐ was not ☐ subsequently provided.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

By: *Tracy Ross*                                          September 11, 2024

*Tracy Ross*            , Authorized Signor for Mortgage Servicer   Date

# EXHIBIT 10

 

**This page is part of your document - DO NOT DISCARD**

## 20240917065




**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/24/24 AT 08:00AM**

| | |
|---|---:|
| FEES: | 32.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 107.00 |



**L E A D S H E E T**



202412240240019

**00025108517**



015064203

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**



*E464790*   2529294CAD_Package_2_

RECORDING REQUESTED BY
**Asset Default Management, Inc.**

AND WHEN RECORDED MAIL TO:
**Asset Default Management, Inc.**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**

T.S. No.: **2024-01966**    Loan No.: **SLS-102717**

SPACE ABOVE THIS LINE FOR RECORDER'S USE
APN: **7044-032-012**

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/16/2017. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **Soluzion, Inc., A California Corporation**
Duly Appointed Trustee: **Superior Loan Servicing**
Recorded **10/30/2017** as Instrument No. **20171242926** in book , page    of Official Records in the office of the
Recorder of **Los Angeles** County, California,
Date of Sale: **1/17/2025 at 11:00 AM**
Place of Sale:    **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766**
Amount of unpaid balance and other charges: **$1,074,511.05**
Street Address or other common designation of real property:    **12711Castleford Lane**
**Cerritos, Ca 90703**

A.P.N.: **7044-032-012**
**"As Is Where Is"**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the

location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 730-2727 or visit this Internet Web site www.servicelinkASAP.com, using the file number assigned to this case 2024-01966. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (714) 730-2727, or visit this internet website www.servicelinkASAP.com, using the file number assigned to this case 2024-01966 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: 12/20/2024

**Superior Loan Servicing, by Asset Default Management Inc., as Agent for Trustee**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**
**Sale Line: (714) 730-2727**

**Julie Taberdo, Sr. Trustee Sale Officer**

# EXHIBIT 11

| | |
|---|---|
| **From:** | Matthew Mark <matthew.mark@usrecorp.com> |
| **Sent:** | Thursday, April 10, 2025 4:56 PM |
| **To:** | Glenn Kelble |
| **Cc:** | Charmaine Mark, USRE |
| **Subject:** | Fwd: FW: LOAN #SLS-102717 POSTPONEMENT REQUEST 12711 CASTLEFORD LANE CERRITOS CA 90703 TS#2024-01966 SALE DATE 04/18/2025 |
| **Attachments:** | California Residential Purchase Agreement - 1224 (5).pdf; Pending MLS - 12711 Castleford Lane.pdf |

-------- Forwarded Message --------
**Subject:** FW: LOAN #SLS-102717 POSTPONEMENT REQUEST 12711 CASTLEFORD LANE CERRITOS CA 90703 TS#2024-01966 SALE DATE 04/18/2025
**Date:** Thu, 10 Apr 2025 18:37:23 +0000
**From:** Team DM
**To:** charmaine.mark@usrecorp.com , matthew.mark@usrecorp.com , usrecorp1@gmail.com

Good morning,
Please see the below email and that attached purchase agreement. This is an automatic postponement for 45days. I will email you the new sale date today.
*"We will respond to your email within 24 – 48 hours."*



This e-mail transmission and any documents, filed or previous e-mailed messages attached to it, contains information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, confidential and/or privileged. If you are not the intended recipient (or authorized to receive on their behalf), you are hereby notified that any viewing, copying, disclosure, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please notify the sender by reply e-mail, and delete the original transmission without reading, making copies or saving it in any manner. Thank you.

**This email might be or include an attempt to collect a debt and any information obtained may be used for that purpose.**

1

🖨 *Think Green. Please consider the environment before printing this email.*

---

**From:** Katie Dares
**Sent:** Wednesday, April 9, 2025 6:05 PM
**To:** Info@SuperiorLoanServicing.com; Team DM
**Cc:** Angela Sierra ; Rachel K Serwano
**Subject:** LOAN #SLS-102717 POSTPONEMENT REQUEST 12711 CASTLEFORD LANE CERRITOS CA 90703 TS#2024-01966 SALE DATE 04/18/2025

### 2ND REQUEST FOR AB2424 POSTPONEMENT

Hello,

My name is Katie Dares, I am a realtor with Home Saver Realty. I am representing Margarita Ramirez for the sale of her property.

I am requesting a postponement of the Trustee Sale - TS #2024-01966 (12711 CASTLEFORD LANE CERRITOS CA 90703) scheduled on 04/18/2025.

I am requesting a postponement of 45 days in order to have sufficient time close escrow on this property due to bill AB2424 (2nd request). This has also been sent by mail via FEDEX and the tracking number is 8804 4259 5927.

I have attached the PURCHASE AGREEMENT and the PENDING MLS sheet for this property.

Escrow information:
Jewel Escrow, Inc
Officer: Edith Ordonez
Escrow #: 15558-EO
(909) 861-6800
edith@jewelescrow.com
Please feel free to contact me at (657) 758-3929 or by email at katie@homesaverrealty.com.

Please let me know if you have any questions.

Thank you for your understanding of this urgent matter. I look forward to your response.

**Cross Property 360 Property View**

Case 2:25-bk-14726-NB    Doc 33    Filed 01/19/26    Entered 01/19/26 13:31:57    Desc
12711 Castleford Lane, Cerritos, CA 90703    Main Document    Page 105 of 145

| Listing |
|---|

**12711 Castleford Ln, Cerritos 90703**    STATUS: **Pending**    LIST PRICE: **$2,298,888** ↑

Left on Derbyshire Ln Right on Castleford Ln




BED / BATH: **4/3,0,0,0**
SQFT(src): **2,492 (A)**
PRICE PER SQFT: **$922.51**
LOT(src): **7,806/0.1792 (A)**
LEVELS: **Two**
GARAGE: **2/Attached**
YEAR BUILT(src): **1977 (PUB)**
PROP SUB TYPE: **SFR/D**
DOM / CDOM: **29/29**
SLC: **Notice Of Default**
PARCEL #: **7044032012**
LISTING ID: **PW25009514**

Recent: **04/09/2025 : PEND : A->P**

**Submit Offer**

| DESCRIPTION |
|---|

This stunning home in Shadow Park boasts 4 spacious bedrooms and 3 luxurious bathrooms, offering over 2,492 square feet of living space. With a open-concept design, it provides ample room for family living and entertaining. The property features stylish finishes, a well-appointed kitchen, and a beautiful backyard, making it the perfect blend of comfort and elegance.

EXCLUSIONS:    INCLUSIONS:

AREA: **699 - Not Defined**    LIST $ ORIGINAL: **$1,750,000**    SELLER WILL CONSIDER    COOLING: **Central Air**
SUBDIVISION: **/**    BASEMENT SQFT:    CONCESSIONS IN OFFER:    HEATING: **Central**
COUNTY: **Los Angeles**    COMMON WALLS: **No Common**    ROOM TYPE: **All Bedrooms**    VIEW: **Neighborhood, Park/Greenbelt**
SENIOR COMMUNITY?: **No**    **Walls**    **Up, Family Room, Kitchen,**    WATERFRONT:
CERTIFIED 433A?:    PARKING:    **Laundry, Living Room**    LAUNDRY: **Individual Room, Inside**
    HORSE:    EATING AREA:
    PROBATE AUTHORITY:

PROP SUB TYPE: **Single Family**    STRUCTURE TYPE: **House**    COMMON INTEREST: **None**
**Residence (Detached)**

| INTERIOR |
|---|

INTERIOR:    ACCESSIBILITY:    FLOORING:
MAIN LEVEL BEDROOMS: **4**    APPLIANCES:    ENTRY LOC/ENTRY LVL: **front door/1**
MAIN LEVEL BATHROOMS: **3**    KITCHEN FEATURES:    FIREPLACE: **Family Room**
    BATHROOM FEATURES:

| EXTERIOR |
|---|

EXTERIOR:    SECURITY:    LOT: **0-1 Unit/Acre**    PATIO/PORCH:
FENCING:    SEWER: **Public Sewer**    POOL: **None**    SPA:
DIRECTION FACES:

| BUILDING |
|---|

BUILDER NAME:    ARCH STYLE:    ROOF:    CONSTR MTLS:
MAKE:    DOOR:    FOUNDATION DTLS:    OTHER STRUCT:
BUILD MODEL:    WINDOW:    PROP COND:    NEW CONSTRUCTION YN: **No**
TAX MODEL:

| GARAGE AND PARKING |
|---|

ATTACHED GARAGE?: **Attached**    PARKING TOTAL: **2**    GARAGE SPACES: **2**    CARPORT SPACES:
UNCOVERED SPACES:    # REMOTES:    RV PARK DIM:

| GREEN |
|---|

GREEN ENERGY GEN:    GREEN ENERGY EFF:    GREEN SUSTAIN:    GREEN WTR CONSERV:
WALK SCORE:

| POWER PRODUCTION |
|---|

POWER PRODUCTION: **No**    GREEN VERIFICATION: **No**

| COMMUNITY |
|---|

HOA FEE: **$320/Monthly**    HOA NAME: **Shadow Park HOA**    HOA PHONE:    # OF UNITS: **1**
HOA FEE 2:    HOA NAME 2:    HOA PHONE 2:    # UNITS IN COMMUNITY:
HOA FEE 3:    HOA NAME 3:    HOA PHONE 3:    STORIES TOTAL: **2**
COMMUNITY: **Park**    HOA AMENITIES:
HOA MANAGEMENT NAME: **Powerstone**
HOA MANAGEMENT NAME 3:

## LAND

| | | | |
|---|---|---|---|
| LAND LEASE?: **No** | LAND LEASE AMOUNT: | UTILITIES: | TAX LOT: **48** |
| PARCEL #: **7044032012** | LAND LEASE AMT FREQ: | DISTRIC: | TAX BLOCK: |
| ADDITIONAL APN(s): **No** | LAND LEASE PURCH?: | WATER SOURCE: **Public** | TAX TRACT #: **32894** |
| | LAND LEASE RENEW: | LOT SIZE DIM: | ZONING: **CEADP4** |
| | | ASSESSMENTS: **Unknown** | TAX OTHER ASSESSMENT: **$549** |
| | | | TAX OTHER ASSESS SOURCE: **Estimated** |

## SCHOOL

HIGH SCHOOL DISTRICT: **Los Angeles Unified**     ELEMENTARY:          MIDDLE/JR HIGH:          HIGH SCHOOL:
HIGH SCH DIST SOURCE:     ELEM SOURCE:          MIDDLE/JR SOURCE:          HIGH SOURCE:
                         ELEMENTARY OTHER:     MIDDLE/JR HIGH OTHER:     HIGH SCHOOL OTHER:

## LISTING / DATES

| | | |
|---|---|---|
| BAC: | TERMS: **Cash, Conventional, Submit** | LIST CONTRACT DATE: **12/06/24** |
| BAC RMRKS: | LIST AGRMT: **Exclusive Right To Sell** | START SHOWING DATE: |
| DUAL/VARI COMP?: **No** | LIST SERVICE: **Full Service** | ON MARKET DATE: **01/14/25** |
| LEASE CONSIDERED?: **No** | AD NUMBER: | PRICE CHG TIMESTAMP: **03/24/25** |
| CURRENT FINANCING: | DISCLOSURES: | STATUS CHG TIMESTAMP: **04/09/25** |
| POSSESSION: | INTERNET, AVM?/COMM?: **Yes/Yes** | MOD TIMESTAMP: **04/09/25** |
| SIGN ON PROPERTY?: | INTERNET?/ADDRESS?: **Yes/Yes** | EXPIRED DATE: **03/06/26** |
| CONTINGENCY LIST: | NEIGHBORHOOD MARKET REPORT YN?: **Yes** | PURCH CONTRACT DATE: **04/09/25** |
| | | EST. CLOSE DATE: **04/30/25** |

CONTINGENCY:

**PRIVATE REMARKS: SOLD AS IS. TEXT Katie at (657) 758-3929 or Rachel at (949) 289-9512. Please send all offers to katie@homesaverrealty.com Please include: POF, FICO SCORES, DU APPROVAL LETTER. Broker and broker agents do not represent or guarantee accuracy of the square footage, bedroom/bathroom count, lot size or lot lines/ dimensions, permitted or unpermitted spaces, school boundary lines or eligibility, or other information concerning the conditions or features of the property. All information is deemed reliable but not guaranteed, buyer and buyer's agent is advised to independently verify the accuracy of all information and all aspects to the subject.**

## SHOWING INFORMATION

SHOW CONTACT TYPE: **Agent**     LOCK BOX LOCATION: **N/A**          OCCUPANT TYPE: **Owner**
SHOW CONTACT NAME:     LOCK BOX TYPE: **None**          OWNER'S NAME:
SHOW CONTACT PH:
SHOW INSTRUCTIONS: **Please contact Katie at (657) 758-3929 or Rachel at (213) 880-5972 with a 24 hour notice to schedule a showing. Showings to begin on Monday, March 17, 2025. No Tuesday showing available. Please request a showing between 3pm-6pm.**
DIRECTIONS: **Left on Derbyshire Ln Right on Castleford Ln**

## AGENT / OFFICE / CONTACT PRIORITY

LA: (**PWDARKAI**) **Kaitlyn Dares**     LA State License: **02161851**          1.LA CELL:
CoLA: **Rachel Serwano**          CoLA State License: **01816239**
LO: (**PB17564**) **Home Saver Realty**     LO State License: **01952643**
LO PHONE: **877-243-4632**          LO FAX: **949-502-0819**
CoLO: Home Saver Realty          CoLO State License: **01952643**
CoLO PHONE: **877-243-4632**          CoLO FAX: **949-502-0819**
                                   Offers Email: **katie@homesaverrealty.com**

## COMPARABLE INFORMATION

| | | | |
|---|---|---|---|
| CLOSE PRICE: | BA: **()** | CoBA: **()** | CONCESS FINANCING COSTS $: |
| LIST PRICE: **$2,298,888** | BO: | CoBO: | CONCESS PROP IMPROV COSTS $: |
| LIST $ ORIGINAL: | BA State License: | CoBA State License: | CONCESS BUYER BROKER FEE $: |
| PURCH CONTRACT DATE: **04/09/25** | BO State License: | CoBO State License: | CONCESS CLOSING COSTS $: |
| EST. COE: **04/30/25** | | | CONCESS OTHER COSTS $: |
| DOM/CDOM: **29/29** | | | CONCESS AMOUNT (**TOTAL**) $: |
| BUYER FINANCING: | | | CONCESSION CMTS: |

## ESTIMATED SELLING INFORMATION

EST BUYER AGENT: **PWDARKAI**          EST BUYER OFFICE: **Home Saver Realty**     EST CLOSE DATE: **04/30/25**
EST BA STATE LICENSE: **02161851**     EST BO STATE LICENSE: **01952643**
EST CO BUYER AGENT:          EST CO BUYER OFFICE:
EST CO BA STATE LICENSE:     EST CO BO STATE LICENSE:

AGENT FULL: Residential     LISTING ID: PW25009514          Printed by Kaitlyn Dares, State Lic: 02161851 on 04/09/2025 3:32:59 PM



CALIFORNIA
ASSOCIATION
OF REALTORS®

(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/24)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _*Jose Arechiga*_____ *Jose Arechiga* Date 04/09/2025

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _*Carlos Arechiga*_____ *Carlos Arechiga* Date 04/09/2025

Agent _____ *Home Saver Realty* _____ DRE Lic. # *01952643*
                     Real Estate Broker (Firm)
By _*Kaitlyn Dares*_____ *Kaitlyn Dares* DRE Lic. # *02161851* _____ Date 04/09/2025
          (Salesperson or Broker-Associate, if any)


EQUAL HOUSING OPPORTUNITY

AD REVISED 12/24 (PAGE 1 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

2079.13. As used in this section and §§ 2079.7 and 2079.14, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.
**(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.
2079.14. **(a)** A copy of the disclosure form specified in § 2079.16 shall be provided in a real property transaction as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller before entering into a listing agreement. (2) The buyer's agent shall provide the disclosure to the buyer as soon as practicable before the execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer. **(b)** The agent providing the disclosure form specified in § 2079.16 shall obtain a signed acknowledgement of receipt from the buyer or seller except as provided in § 2079.15.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the fact of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17**(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.
2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 **(a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**AD REVISED 12/24 (PAGE 2 OF 2)**



# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

**CALIFORNIA ASSOCIATION OF REALTORS®**

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/24)

Date Prepared: **April 9, 2025**

**1. OFFER:**

**A.** THIS IS AN OFFER FROM **Jose Arechiga, Carlos Arechiga** ("Buyer").

**B.** THE PROPERTY to be acquired is **12711 Castleford Lane**, situated in **Cerritos** (City), **Los Angeles** (County), California, **90703** (Zip Code), Assessor's Parcel No(s). **7044-032-012** ("Property").
(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)

**C.** THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.

**D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**

**A.** DISCLOSURE: The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.

**B.** CONFIRMATION: The following agency relationships are hereby confirmed for this transaction.

Seller's Brokerage Firm **Home Saver Realty** License Number **01952643**
Is the broker of (check one): ☐ the Seller; or ☒ both the Buyer and Seller (Dual Agent).
Seller's Agent **Kaitlyn Dares** License Number **02161851**
Is (check one): ☐ the Seller's Agent. (Salesperson or broker associate); or ☒ both the Buyer's and Seller's Agent (Dual Agent).
Buyer's Brokerage Firm **Home Saver Realty** License Number **01952643**
Is the broker of (check one): ☐ the Buyer; or ☒ both the Buyer and Seller (Dual Agent).
Buyer's Agent **Kaitlyn Dares** License Number **02161851**
Is (check one): ☐ the Buyer's Agent (Salesperson or broker associate); or ☒ both the Buyer's and Seller's Agent (Dual Agent).

**C.** ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).

**D.** POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3.** TERMS OF PURCHASE AND ALLOCATION OF COSTS: The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $ *2,200,000.00* | ☐ All Cash |
| **B** | | **Close Of Escrow (COE)** | ☒ **21** Days after Acceptance OR on _____ (date) | |
| **C** | 33A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or _____ ☐ AM/ ☐ PM | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** | $ *1,000.00* ( **0.05** % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR ☐ |
| **D(2)** | 5A(2) | ☐ **Increased Deposit** | See attached Increased Deposit Addendum (C.A.R. Form IDA) | |
| **E(1)** | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ *1,540,000.00* ( **70.00** % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____% • Buyer to pay up to _____ points to obtain the rate above / 17 (or ____) Days after Acceptance | Conventional or, if checked, ☐ FHA (Forms FVAC/HID attached) ☐ VA (Form FVAC attached) ☐ Seller Financing ☐ Other: _____ |
| **E(2)** | 5C(2) | **Additional Financed Amount** Interest Rate / Points | $ _____ ( _____% of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____% • Buyer to pay up to _____ points to obtain rate above | Conventional or, if checked, ☐ Seller Financing ☐ Other: _____ |
| **E(3)** | 7A | **Occupancy Type** | Primary, or if checked, ☐ Secondary ☐ Investment | |
| **F** | 5D | **Balance of Down Payment** | $ *659,000.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *2,200,000.00* | |

© 2024, California Association of REALTORS®, Inc.

**RPA REVISED 12/24 (PAGE 1 OF 17)**

Buyer's Initials  JA / CA    Seller's Initials  ____ / ____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 17)**

| G | SELLER PAYMENT TO COVER BUYER EXPENSES AND COSTS | | |
|---|---|---|---|
| G(1) | 5E | ☒ Seller Credit to Buyer    $ 114,487.00 | For closing costs |
| G(2) | | **ADDITIONAL SELLER CREDIT TERMS** (does not include buyer broker compensation): _____ | |
| G(3) | 18A(2), 18A(3) | ☒ **Seller Payment for Buyer's Obligation to compensate Buyer's Broker** | **Seller agrees to pay,** out of transaction proceeds, _2.000_ % of the final purchase price AND, if applicable $ _____ OR, if checked ☐ $ _____ toward the **obligation of Buyer to compensate Buyer's Broker.** |
| | | **Buyer Compensation Affirmation** | Buyer affirmatively represents that, at the time this offer is made, Buyer has a written agreement with Buyer's Broker that: **(i)** is valid; **(ii)** covers the Property; and **(iii)** provides for compensation for no less than the amount stated above. |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | **Intentionally Left Blank** | | |
| J | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____) Days after Acceptance | |
| L | | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or _____) Days after Acceptance | ☐ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☐ No appraisal contingency    Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or _____) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** | 17 (or _____) Days after Acceptance | |
| | | Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | | Any contingency in L(1)-L(8) may be removed or waived by checking the |
| L(4) | 8D | **Insurance** | 17 (or _____) Days after Acceptance | applicable box above or attaching a Contingency Removal (C.A.R. Form |
| L(5) | 8E, 14A | **Review of Seller Documents** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | CR-B) and checking the applicable box therein. Removal or Waiver at |
| L(6) | 8F, 13A | **Preliminary ("Title") Report** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | time of offer is against Agent advice. See **paragraph 8I.** |
| L(7) | 8G, 11L | **Common Interest Disclosures** Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8H, 9B(6) | **Review of leased or liened items** (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☐ CR-B attached |
| L(9) | 8K | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | **Seller Occupied or Vacant units** | COE date or, if checked below, _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | **Occupied units by tenants or anyone other than the Seller** | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | See **7A** if TOPA is not attached. |
| N | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 32 | Evidence of representative authority | 3 Days after Acceptance | |
| O | **Intentionally Left Blank** | | |

**RPA REVISED 12/24 (PAGE 2 OF 17)**

Buyer's Initials  /     Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 17)**

| P | Items Included and Excluded | | | |
|---|---|---|---|---|
| P(1) | 9 | **Items Included** – All items specified in Paragraph 9B are included and the following, if checked: | | |

P(1) — Items Included:
- ☐ Stove(s), oven(s), stove/oven combo(s);
- ☐ Refrigerator(s);
- ☐ Wine Refrigerator(s);
- ☐ Washer(s);
- ☐ Dryer(s);
- ☐ Dishwasher(s);
- ☐ Microwave(s);

**Additional Items Included:**
☐ _____ .

- ☐ Video doorbell(s);
- ☐ Security camera equipment;
- ☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
- ☐ Smart home control devices;
- ☐ Wall mounted brackets for video or audio equipment;

☐ _____ ;

- ☐ Above-ground pool(s) / ☐ spa(s);
- ☒ Bathroom mirrors, unless excluded below;
- ☐ Electric car charging systems and stations;
- ☐ Potted trees/shrubs;

☐ _____
☐ _____

| P(2) | | **Excluded Items:** | | |

P(2) — Excluded Items:
☐ _____ ☐ _____ ; ☐ _____

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Para #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ <br> Provided by: *MyNHD **Best Value*** | ☒ Environmental <br> ☐ Other _____ |
| Q(2) | | Optional Wildfire Disclosure Report | ☐ Buyer ☐ Seller ☐ Both _____ <br> Provided by: | |
| Q(3) | | (A) _____ Report <br> (B) _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ <br> ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both _____ <br> Escrow Holder: *Jewel Escrow, Inc - Edith Ordonez* | ☒ Each to pay their own fees |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☐ Seller ☐ Both _____ <br> Title Co. (If different from Escrow Holder): *WFG Title - Sean Mill* | |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☒ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both | |
| Q(16) | | *TC FEE $575* _____ fees or costs | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: _____ _____ <br> Issued by: _____ <br> ☒ Buyer waives home warranty plan | ☐ Buyer ☐ Seller ☐ Both _____ | If Seller or Both checked, Seller's cost not to exceed $ _____ |

| R | OTHER TERMS: *Seller to gift 30% of purchase price to the buyers at the close of escrow as a down payment. Property SOLD AS IS.* <br> _____ |
|---|---|

Buyer's Initials  /    Seller's Initials  / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 17)**

**4. PROPERTY ADDENDA AND ADVISORIES:** (Check items that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:

☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)    ☐ Other _____

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:

☐ Addendum # _____ (C.A.R. Form ADM)    ☐ Short Sale Addendum (C.A.R. Form SSA)
☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)    ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
☐ Other _____    ☐ Other _____

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**

☒ Buyer's Investigation Advisory (C.A.R. Form BIA)    ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
☒ Wire Fraud Advisory (C.A.R. Form WFA)    ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
    (Parties may also receive a privacy disclosure from their own Agent.)
☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)    ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ REO Advisory (C.A.R. Form REO)    ☐ Probate Advisory (C.A.R. Form PA)
☐ Other _____    ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
(2) **RETENTION OF DEPOSIT:** Paragraph 26, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
(4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if Buyer based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

RPA REVISED 12/24 (PAGE 4 OF 17)    Buyer's Initials ___JA___ / ___CA___    Seller's Initials ___QMR___ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    Jose Arechiga and

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
Unless Otherwise Agreed: **(i)** the Property shall be delivered "**As-Is**" in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

(3) ☒ Fair Appraisal Act: See **paragraph 29** for additional information.

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**

**D. INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**E. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A.**

---

**RPA REVISED 12/24 (PAGE 5 OF 17)**    Buyer's Initials  JA / CA    Seller's Initials  MR /



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 17)**

Authentisign ID: DBBDE400-8015-FA11-8B3D-002248225E7A
Property Address: 1271 Castlefield Lane, Cerritos, CA 90703    Date: April 9, 2018

Case 2:25-bk-12637-NB    Doc 33    Filed 01/19/26    Entered 01/19/26 13:21:57    Desc
Main Document    Page 114 of 145

**F.   TITLE:**
(1)   This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
(2)   Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**G.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**H.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**I.   REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**J.   REMOVAL OF CONTINGENCY OR CANCELLATION:**
(1)   **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
(2)   For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
(3)   If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**K.   SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9)**.

**9.   ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A.   NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or as **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B.   ITEMS INCLUDED IN SALE:**
(1)   All EXISTING fixtures and fittings that are attached to the Property;
(2)   EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.
(3)   Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
(4)   Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
(5)   Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.
(6)   **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, is not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

---

**RPA REVISED 12/24 (PAGE 6 OF 17)**          Buyer's Initials  /      Seller's Initials  /

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          Jose Arechiga and

(7)  Seller represents that all items included in the purchase price unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C.  ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A.  INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in **paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

**B.  GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1)  **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2)  **POINT OF SALE REQUIREMENTS:**

  (A)  Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)** and any such repair, shall be completed prior to final verification of Property, unless Otherwise Agreed. Defensible space compliance shall be determined as agreed in C.A.R. Form FHDS. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

  (B)  Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3)  **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4)  **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C.  HOME WARRANTY:**

(1)  Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2)  **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.  TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1)  Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2)  The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3)  Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

**RPA REVISED 12/24 (PAGE 7 OF 17)**          Buyer's Initials  _JA_ / _CA_    Seller's Initials  _MR_ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          Jose Arechiga and



(4) In the event Seller or Seller's **Agent prior to Close Of Escrow, becomes aware** of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
   (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A**, **B**, **C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
   (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A**, **B**, **C**, or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
   (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

**RPA REVISED 12/24 (PAGE 8 OF 17)**          Buyer's Initials  __JA__ / __CA__          Seller's Initials  __MR__ / ____          

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    Jose Arechiga and

(2)  If the Property is a condominium or located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M.  SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N.  BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**O.  KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.**  Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.**  Buyer Investigations include, but are not limited to:

(1)  Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
(A)  A general home inspection.
(B)  An inspection for lead-based paint and other lead-based paint hazards.
(C)  An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and area exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
(D)  Any other specific inspections of the physical condition of the land and improvements.
(2)  Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.**  Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.**  Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E.**  **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.**  Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.**  Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.**  Seller shall, within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.**  Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.**  If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, therefore where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**RPA REVISED 12/24 (PAGE 9 OF 17)**          Buyer's Initials ___ / ___          Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com          Jose Arechiga and

**F.** Buyer shall, after Close Of Escrow, execute and grant to Seller any conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. **THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.**

**G.** Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

**A. SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 11O, 13A, 13D, and 32.**

**B. BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G.**

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1).**

**C. SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3); (iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A; (v)** Deliver a letter as required by **paragraph 6B; (vi)** In writing assume or accept leases or liens specified in **paragraph 8H; (vii)** Return Statutory and Other Disclosures as required by **paragraph 11F; (viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E; (ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 26; (x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 32;** or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D. BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8,** or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

---

**RPA REVISED 12/24 (PAGE 10 OF 17)**    Buyer's Initials   Seller's Initials     

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 17)**

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that Party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**
   A. **COMPENSATION:**
      (1) **Timing of Broker Compensation:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
      (2) **Buyer Representation; Seller Payment to Compensate Buyer's Broker:** Buyer affirmatively represents that Buyer, at the time this offer is made, has a written agreement with Buyer's Broker that: **(i)** is valid; **(ii)** covers the Property; and **(iii)** provides for compensation for no less than the amount stated in **paragraph 3G(3)**. If any representation (i)–(iii) is not true, then Seller has no obligation to pay Buyer's Broker. The amount of compensation, if a percentage, will be based on the final purchase price. Buyer's obligation to pay Buyer's Broker shall be offset by any amount that Seller pays Buyer's Broker.
      (3) **Third party beneficiary:** Seller acknowledges and agrees that Buyer's Broker is a third-party beneficiary of this agreement and may pursue Seller for failure to pay the amount specified in this document.

RPA REVISED 12/24 (PAGE 11 OF 17)          Buyer's Initials           Seller's Initials  

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 17)**

B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

19. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. **ESCROW INSTRUCTION PARAGRAPHS: The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D–G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 31, 32, 33, and 34.** The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

B. **ESCROW HOLDER GENERAL PROVISIONS:** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

C. **COPIES; STATEMENT OF INFORMATION; TAX WITHHOLDING INSTRUCTIONS:** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

D. **BROKER COMPENSATION:**
    (1) **PAYMENT:** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A.** If a Copy of the separate compensation agreement(s) is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.
    (2) **COMPENSATION DISCLOSURE:** Escrow Holder shall provide to Buyer a closing statement or other written documentation disclosing the amount of compensation paid to Buyer's Broker. Escrow Holder shall provide to Seller a closing statement or other written documentation disclosing: **(i)** the amount of compensation paid to Seller's Broker; and **(ii)** if applicable pursuant to **paragraph 3G(3)** or other mutual instruction of the parties, the amount paid by Seller for Buyer's Broker compensation. Escrow Holder's obligation pursuant to **paragraph 19D,** is not intended to alter any preexisting practice of Escrow Holder to issue, as applicable, joint or separate closing statements. Escrow Holder's obligation pursuant to **paragraph 19D** is independent of, but may be satisfied by, any closing statement mandated by Buyer's lender.

E. **INVOICES:** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. **VERIFICATION OF DEPOSIT:** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1)** and C.A.R. Form IDA. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. **DELIVERY OF AMENDMENTS:** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

20. **SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

21. **MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

22. **ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 27A.**

RPA REVISED 12/24 (PAGE 12 OF 17)    Buyer's Initials  JA  / CA    Seller's Initials  JLR  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    Jose Arechiga and

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.** **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (i) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it is located in the inbox for the applicable Party or Authorized Agent; or (ii) an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 33** or **paragraph 34.**

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

RPA REVISED 12/24 (PAGE 13 OF 17)     Buyer's Initials  /      Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 17)**



**26. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages)**:**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials *JA* / *CA*                Seller's Initials *JMR* / _____

**27. MEDIATION:**
    **A.**  The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
    **B.**  **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 28B; **(ii)** The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 28C; and **(iii)** Agent's rights and obligations are further specified in paragraph 28D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

**28. ARBITRATION OF DISPUTES:**
    **A.**  **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
    **B.**  **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: **(i)** Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; **(ii)** an unlawful detainer action; and **(iii)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
    **C.**  **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: **(i)** the filing of a court action to preserve a statute of limitations; **(ii)** the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or **(iii)** the filing of a mechanic's lien.
    **D.**  **AGENTS:** Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
    **E.**  **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

        **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials *JA* / *CA*                Seller's Initials *JMR* / _____


**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 17)**

**29. FAIR APPRAISAL ACT NOTICE:**
- **A.** Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.
- **B.** If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**30. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**31. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**32. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 33** or **34** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**33. OFFER**
- **A.** **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**
- **B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
  - (1) **Non-Individual (entity) Buyers:** One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
  - (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
  _____ .
  - (3) **Contractual Identity of Buyer:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
    - (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
    - (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
  - (4) **Legally Authorized Signer:**
    - (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 32** for additional terms.
    - (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .
- **C.** The RPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.
- **D.** **BUYER SIGNATURE(S)**

(Signature) By, *Jose Arechiga* _____ **Date:** 04/09/2025

Printed name of BUYER: *Jose  Arechiga* _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, *Carlos Arechiga* _____ **Date:** 04/09/2025

Printed name of BUYER: *Carlos  Arechiga* _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**RPA REVISED 12/24 (PAGE 15 OF 17)**   Buyer's Initials  /    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Jose Arechiga and

**34. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer. **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

☐ Seller Counter Offer (C.A.R. Form SCO or SMCO)

☐ Back-Up Offer Addendum (C.A.R. Form BUO)

**B.** ☐ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
_____.

(3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.

(A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);

(B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**

(A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 32** for additional terms.

(B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

**C.** The RPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**

(Signature) By, _*Margarita Ramirez*_____    Date: 04/09/2025_____

Printed name of SELLER: _**Margarita Ramirez**_____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____    **Date:** _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| OFFER NOT ACCEPTED: _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
| --- |
| Seller's Initials |

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

**PROCEED TO NEXT PAGE**

  

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 17)**

Authentisign ID: DBBDE400-8015-FA11-BB3D-00224822E752

Property Address: 12571 Pleasterbrook Lane, Cerritos, CA 90703  Case 2:25-bk-14726-NB  Doc 33  Filed 01/19/26  Entered 01/19/26 13:21:57  Desc  Date: April 9, 2025
Main Document    Page 125 of 145

## REAL ESTATE BROKERS SECTION

1.  **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2.  **Agency relationships are confirmed as stated in paragraph 2.**
3.  **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4.  **Agents' Signatures and designated electronic delivery address:**

A.  Buyer's Brokerage Firm _Home Saver Realty_ _____ DRE Lic. # _01952643_
    By _Kaitlyn Dares_ _____ _Kaitlyn Dares_ DRE Lic. # _02161851_ ____ Date _04/09/2025_
    By _____ DRE Lic. # _____ Date _____
    Address _1503 South Coast Dr._ _____ City _Costa Mesa_ _____ State _CA_ Zip _92626_
    Email _katie@homesaverrealty.com_ _____ Phone # _(657)758-3929_
    ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
    ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
    **Designated Electronic Delivery Address(es): Email above or** _____
    ☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

B.  Seller's Brokerage Firm _Home Saver Realty_ _____ DRE Lic. # _01952643_
    By _Kaitlyn Dares_ _____ _Kaitlyn Dares_ DRE Lic. # _02161851_ ____ Date _04/09/2025_
    By _____ DRE Lic. # _____ Date _____
    Address _____ City _____ State _____ Zip _____
    Email _katie@homesaverrealty.com_ _____ Phone # _(657)758-3929_
    ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
    ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
    **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** _____
    ☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

Buyer's Initials  _H_ / _CA_   Seller's Initials  _KR_ / _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _KD_ / _____ Seller's Brokerage Firm presented this offer to Seller on _04/09/2025_ ____ (date).
Agent or Seller Initials

---

© 2024, California Association of REALTORS®, **Inc.** United States copyright law (Title 17 **U.S.** Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. _a subsidiary of the California Association of REALTORS®_

**RPA REVISED 12/24 (PAGE 17 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 17 OF 17)**



**BUYER'S INVESTIGATION ADVISORY**
(C.A.R. Form BIA, Revised 12/21)

**Property Address** _12711 Castleford Lane, Cerritos, CA 90703_

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**



**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _Jose Arechiga_ _____ Jose  Arechiga Date 04/09/2025 _____

Buyer _Carlos Arechiga_ _____ Carlos  Arechiga Date 04/09/2025 _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**BIA REVISED 12/21 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers.  Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _Margarita Ramirez_ _____    _Margarita Ramirez_ Date 04/09/2025

Seller _____    Date _____

Buyer _Jose Arechiga_ _____    _Jose  Arechiga_ Date _____

Buyer _Carlos Arechiga_ _____    _Carlos  Arechiga_ Date 04/09/2025

Buyer's Brokerage Firm _Home Saver Realty_    DRE Lic # _01952643_
By _Kaitlyn Dares_ _____    DRE Lic # _02161851_    Date 04/09/2025
Kaitlyn Dares

Seller's Brokerage Firm _Home Saver Realty_    DRE Lic # _01952643_
By _Kaitlyn Dares_ _____    DRE Lic # _02161851_    Date 04/09/2025
Kaitlyn Dares

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

# FAIR HOUSING AND DISCRIMINATION ADVISORY
**(C.A.R. Form FHDA, Revised 12/24)**

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2024, California Association of REALTORS®, Inc.
**FHDA REVISED 12/24 (PAGE 1 OF 2)**



**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

Authentisign ID: 0DE400-8015-FA11-8B3D-00224822F75A

E. Inquiring about protected characteristics (such as asking teenage applicants if they are married, or prospective purchasers if they have children or are planning to have children);
F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;
G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);
H. Denying a home loan or homeowner's insurance;
I. Offering inferior terms, conditions, privileges, facilities or services;
J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;
K. Harassing a person;
L. Taking an adverse action based on protected characteristics;
M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);
N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii) Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;
O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**
A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
B. State: **https://calcivilrights.ca.gov/housing/**
C. Local: local Fair Housing Council office (non-profit, free service)
D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**
F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _Jose Arechiga_    *Jose Arechiga* Date 04/09/2025
Buyer/Tenant _Carlos Arechiga_    *Carlos Arechiga* Date 04/09/2025
Seller/Housing Provider _Margarita Ramirez_    *Margarita Ramirez* Date 04/09/2025
Seller/Housing Provider _____    Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER OR THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC, *a subsidiary of the California Association of REALTORS®*

**FHDA REVISED 12/24 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**



# BUYER HOMEOWNERS' INSURANCE ADVISORY
### (C.A.R. Form BHIA, 6/24)

1. **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding. In the absence of property insurance, the homeowner would be responsible for the full expense. If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest. Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes. The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2. **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be a specific contingency pertaining to insurance or may be part of an overall investigation contingency. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker. Additionally, if the property is part of an HOA, lenders may require and buyers will want to know that the HOA has adequate insurance to cover the areas for which the HOA is responsible.

3. **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies, due to rising replacement costs and an increase in natural disasters. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4. **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise. Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5. **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance. Resources on this State government webpage include: **(i)** Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues. The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance. The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6. **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies. Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

Buyer  _Jose Arechiga_                          **Jose Arechiga**  Date 04/09/2025

Buyer  _Carlos Arechiga_                        **Carlos Arechiga**  Date 04/09/2025

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BHIA 6/24 (PAGE 1 OF 1)**



---

Home Saver Realty, 1503 South Coast Dr. Costa Mesa CA 92626          Phone: (657)758-3929          Fax: (949)502-0819          Jose Arechiga and
Kaitlyn Dares                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201          www.lwolf.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

# WIRE FRAUD AND ELECTRONIC FUNDS
## TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/21)

Property Address: **12711 Castleford Lane, Cerritos, CA 90703**_____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**

2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**

3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**

4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**

5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant *Jose Arechiga* | **Jose Arechiga** Date 04/09/2025 |
| Buyer/Tenant *Carlos Arechiga* | **Carlos Arechiga** Date 04/09/2025 |
| Seller/Landlord *Margarita Ramirez* | **Margarita Ramirez** Date 04/09/2025 |
| Seller/Landlord | Date _____ |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

| R E B S | L L C | Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS® 525 South Virgil Avenue, Los Angeles, California 90020 |  EQUAL HOUSING OPPORTUNITY |

**WFA REVISED 12/21 (PAGE 1 OF 1)**

### WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant *Jose Arechiga* _____ Date 04/09/2025
*Jose Arechiga*

Buyer/Seller/Landlord/Tenant *Carlos Arechiga* _____ Date 04/09/2025
**Carlos  Arechiga**

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

# EXHIBIT 12



**This page is part of your document - DO NOT DISCARD**

## 20250372711





**Pages:
0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/04/25 AT 09:42AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**L E A D S H E E T**



**202506043320012**

**00025539854**



**015341678**

**SEQ:
01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



E646115

RECORDING REQUESTED BY

_____

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME __Margarite Ramirez__

STREET ADDRESS
__12711 Castleford Ln__

CITY, STATE &
ZIP CODE
__Cerritos, CA 90703__

**SPACE ABOVE FOR RECORDER'S USE ONLY**

## Grant Deed

Title of Document

Pursuant to Assembly Bill 1466 – Restrictive Covenant (GC Code Section 27388.2), effective January 1, 2022, a fee of two dollars ($2) for recording the first page of every instrument, paper, or notice required or permitted by law to be recorded per each single transaction per parcel of real property, except those expressly exempted from payment of recording fees, as authorized by each county's board of supervisors and in accordance with applicable constitutional requirements.

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

[ ] Exempt from fee per GC 27388.1(a)(2) and 27388.2 (b); recorded in connection with a transfer subject to the imposition of documentary transfer tax (DTT).

[✓] Exempt from fee per GC 27388.1(a)(2) and 27388.2 (b); recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.

[ ] Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

[ ] Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

WHEN RECORDED MAIL RECORDED
DEED AND TAX STATEMENTS TO:

Soluzion, Inc
Margarita Ramirez
12711 Castleford Lane
Cerritos CA 90703

ASSESSOR'S PARCEL NO. 7044-032-012          ESCROW NO.:

# GRANT DEED

The Undersigned Grantor(s) Declare(s) that Documentary transfer tax is $0.00 and CITY TAX IS $0.00
(x)computed on full value of property conveyed,  OR
( ) computed on the full value less liens of encumbrances remaining at the time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Soluzion, Inc., A California Corporation**

herby GRANT(S) to  **Margarita Ramirez, A Single Woman**

The following real property in the City of **Cerritos**, County of **Los Angeles**, State of
**California**: Described as: See Attached Exhibit "A" made a part hereof

More commonly known as: **12711 Castleford Lane Cerritos CA 90703**

"This is a Bonafide gift and grantor received nothing in return, R & T 11911"

*Soluzion, Inc., A California Corporation*

Soluzion, Inc A California Corporation
by Margarita Ramirez- CEO

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to
which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF                    )
COUNTY OF                   )
On  June 3, 2025              before me,     R. Barrett              , a notary public,
Personally                                                              appeared
          Margarita Ramirez
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) (is)are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and  that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

Witness my hand and official seal.

```
                              R. BARRETT
                              Comm. #2489384
                              Notary Public·California
                              Los Angeles County
                              Comm. Expires Jun 2, 2028
```

Signature  R. Barrett                              (This area for official notarial seal)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California           )
County of Los Angeles         ) S.S.

On ___JUNE 4, 2025___ Before me, VENUS CALDERON MALDONADO, a Notary Public, personally appeared ************************************ MARGARITA RAMIREZ ************************************ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California, that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Place Notary Seal In Box Below

_____
NOTARY'S SIGNATURE

VENUS CALDERON MALDONADO
Notary Public - California
Los Angeles County
Commission # 2466724
My Comm. Expires Oct 16, 2027

_____ OPTIONAL _____

*Though the information is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document:   GRANT DEED

Document Date: JUNE 4, 2025          Number of Pages: 4 PAGES

Signer(s) Other Than Named Above: NONE

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: MARGARITA RAMIREZ
- [x] Individual
- [ ] Corporate Officer-Title(s):_____
- [ ] Partner- [ ] Limited [ ] General
- [ ] Attorney in Fact
- [ ] Trustee
- [ ] Guardian or Conservator
- [ ] Other:_____

**Right Thumbprint of Signer**
Top of Thumb Here

Signer is Representing:
SELF

Signer's Name: _____
- [ ] Individual
- [ ] Corporate Officer-Title(s):_____
- [ ] Partner- [ ] Limited [ ] General
- [ ] Attorney in Fact
- [ ] Trustee
- [ ] Guardian or Conservator
- [ ] Other:_____

**Right Thumbprint of Signer**
Top of Thumb Here

Signer is Representing:
_____

# EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CERRITOS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 48 OF TRACT NO 32894, IN THE CITY OF CERRITOS, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 877, PAGE(S) 53 THROUGH 56 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LAND WITHIN THE LINES OF THE LAND DESCRIBED IN THE DEED RECORDED OCTOBER 22, 1971, AS INSTRUMENT NO 342, OFFICIAL RECORDS, ALL OIL, GAS, MINERALS AND MINERAL RIGHTS LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE THEREOF, WITHOUT THE RIGHT ENTRY THERETO ABOVE A DEPTH OF 500 FEET TOGETHER WITH PASS-THROUGH RIGHTS BELOW A DEPTH OF 500 FEET, AS GRANTED TO DONALD P PALM, A SINGLE MAN, DIANA P HICHMAN, A MARRIED WOMAN, AND CAROLYN J CASTAMON, A MARRIED WOMAN, ALL AS TO AN UNDIVIDED ONE-HALF INTEREST, AND IRA C HOLMES AND MILDRED HOLMES, HIS WIFE, DENZEL L HOLMES AND BLANCHE HOLMES, HIS WIFE, AND FREEMAN METZGER AND MARTHA METZER, HIS WIFE, ALL AS TO AN UNDIVIDED ONE-HALF INTEREST BY DEED RECORDED OCTOBER 22, 1971 AS INSTRUMENT NO 342 IN BOOK D-5231, PAGE 705, OFFICIAL RECORDS.

APN: 7044-032-012

# EXHIBIT 13

**12711 Castleford**
Cerritos, CA 90703

Beds 4.00    Baths 3.00    SqFt 2,492    Single Family

LP $2,099,000

Active




| Area | 1116 Cerritos South of 91 Frwy, E of Norwalk |
|---|---|
| Subdivision | |
| List Price Per Sqft | $842.30 |
| Lot Size | 7,806 |
| HOA Fee 1 & 2 | $320.00(Monthly) |
| MLS# | PW25262998MR |
| APN | 7044-032-012 |

**Directions:** Left on Derbyshire Ln Right on Castleford Ln

**Remarks:** Welcome to 12711 Castleford Lane, Cerritos, CA 90703   a rare opportunity in the prestigious, guard-gated community of Shadow Park. This stunning residence offers 4 spacious bedrooms, 3 beautifully updated bathrooms, and approximately 2,492 sq. ft. of open-concept living space designed for both comfort and style. From the moment you step inside, you ll appreciate the natural light, generous layout, and tasteful finishes throughout. The heart of the home is a well-appointed kitchen with ample counter space and a seamless flow into the expansive family and dining areas perfect for everyday living or hosting gatherings. Each room feels airy and inviting, creating a warm environment for both relaxation and entertaining. Sitting on one of the largest if not the largest lots in the entire neighborhood, this property truly stands out. The backyard offers incredible space and potential, ideal for outdoor living, future expansion, a pool, or creating the ultimate private retreat. Additional highlights include a beautifully maintained exterior, a welcoming curb appeal, and all the perks of living in Shadow Park: 24-hour guard-gated security, resort-style amenities, and top-tier Cerritos schools. A perfect blend of luxury, comfort, and location   homes like this rarely come to market.

**Agent Remarks:** SOLD AS IS. TEXT Naissa at 626-532-0160 or 949-241-0935 Please send all offers to naissa@homesaverrealty.com Please include: POF, FICO SCORES,DUAPPROVAL LETTER. Broker and broker agents do not represent or guarantee accuracy of the square footage, bedroom/bathroom count, lot size or lot lines/dimensions, permitted or unpermitted spaces, school boundary lines or eligibility, or other information concerning the conditions or features of the property. All information is deemed reliable but not guaranteed, buyer and buyer s agent is advised to independently verify the accuracy of all information and all aspects to the subject. Contingency: Please contact Naissa at 626-532-0160 or 949-241-0935.

**Showing Remarks:** Please contact us at 949-241-0935/ Naissa at 626-532-0160 with a 24 hour notice to schedule a showing. No Tuesday showing available.

### Structure Info

| Year Built/Source | 1977/Public Records |
|---|---|
| View | No |
| Stories | 2 |
| Guest House | None |
| PUD | |
| Sewer | Private Sewer |
| Style | |

### Land/Lot Info

| Zoning | |
|---|---|
| Land Type | Fee |
| Land Lease Purchase | |
| Horse Property | |
| Lot Acreage | 0.000 |
| Special Zone | |
| Addl Parcel | |

### Contract Info    DOM 56

| List Date | 12-06-2024 |
|---|---|
| List Price | $2,099,000 |
| Orig List Price | $2,400,000 |
| Status Date | 12-06-2024 |
| Change Date/Type | 01-10-2026/Price Change |
| Sale Type | Notice Of Default |
| Listing Type | Exclusive Right To Sell |
| Seller Concessions? | |
| Co-Ownership | No |

### Community/Development

| Tax Mello Roos | |
|---|---|
| Complex/Assoc Name | Shadow Park |
| Assoc Amenities | Controlled Access, Playground, pool, Security |
| Assoc Fees Include | |
| Assoc Pet Rules | |
| Community Features | Sidewalks, Street Lights |
| Rental Restrictions | |
| Short Term Rentals | |
| Short Term Rental Duration | |

### Parking Details

| Parking Type | |
|---|---|
| Total Spaces | 2 |
| Covered Spaces | |
| Uncovered Spaces | |
| Garage Spaces | 2 |
| Carport Spaces | 0 |

### Showing Info

| Occupancy/Show | |
|---|---|
| Contact Name | Naisa Santeyan |
| Contact Phone | 626-532-0160 |
| Occupant Type | Owner |
| Lockbox Location | |
| Lockbox Type | |
| Gate Code | |

### Interior Features

| # Fireplaces/Details | Living Room |
|---|---|
| Furnished | |
| AC/Cooling | Central |
| Heating | Central |
| Flooring | |
| Equip/Appl | |
| Laundry | Garage |

### Exterior Features

| Pool | Association Pool |
|---|---|
| Spa | |
| Tennis/Courts | |
| Roofing | |
| Fence | |

**Naisa Santeyan**
Home Saver Realty DRE#: 01952643
Seller's Agent1 CALDRE#: 02028994

| Phone / Cell | c: 626-532-0160 |
|---|---|
| Email | naisasanteyan@gmail.com |
| Office Phone | 877-243-4632 |

Broker/Agent does not guarantee the accuracy of the square footage, lot size or other information concerning the conditions or features of the property provided by the seller or obtained from Public Records or other sources. Buyer is advised to independently verify the accuracy of all information through personal inspection and with appropriate professionals. The property may have video/surveillance devices. VESTA*PLUS*™ Copyright © 2026 by TheMLS™. Information deemed reliable but not guaranteed. Presented by: Matthew Mark CALDRE# 01853076





































Broker/Agent does not guarantee the accuracy of the square footage, lot size or other information concerning the conditions or features of the property provided by the seller or obtained from Public Records or other sources. Buyer is advised to independently verify the accuracy of all information through personal inspection and with appropriate professionals. The property may have video/surveillance devices. VESTA*PLUS*™ Copyright © 2026 by TheMLS™. Information deemed reliable but not guaranteed. Presented by: Matthew Mark CALDRE# 01853076

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

515 S. Flower St., 18th Floor, Los Angeles CA 90071

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/19/2026   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Kathy A Dockery (TR)    EFiling@LATrustee.com
Glenn C. Kelble    fileserve@ksgklaw.com
Matthew D. Resnik    matt@rhmfirm.com, roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;
priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 01/19/2026   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 01/19/2026   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 01/19/2026 | Glenn C. Kelble | /s/ Glenn C. Kelble |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.